*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HA NGUYEN,

      Plaintiff-Appellant,

v

KOSTAL CORPORATION OF NORTH
AMERICA, INC.,

      Defendant-Appellee.

UNPUBLISHED
April 23, 2019

No. 342170
Oakland Circuit Court
LC No. 2016-154539-CL

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Plaintiff Ha Nguyen appeals as of right an order granting defendant Kostal Corporation of North America, Inc.'s motion for summary disposition. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case involves a claim of illegal retaliation in violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., and Michigan public policy. Plaintiff worked for defendant as a senior project engineer from August 3, 2015, until his termination on May 17, 2016. He was tasked with testing the software used to operate power window assemblies manufactured by defendant, and although he worked as part of a team, it was plaintiff's sole responsibility to conduct the validation testing on the "DCU" test system.

Throughout his tenure with defendant, plaintiff discovered what he perceived to be major issues with the software used in what was broadly referred to as the B515 project, including that windows could fail to operate in the appropriate direction or to stop moving when obstructed. And plaintiff voiced his concerns to superiors and other team members including Patrick Findling, his direct supervisor, Stefan Braeucker, Adrian Albujuq, and Dirk Sell.

Plaintiff and Findling agree that they had a meeting on April 5, 2016, ten days before the April 15, 2016 deadline for completion of window lift testing, but provide vastly different accounts of what occurred. Findling testified that the only subject discussed was plaintiff's request for medical leave. Plaintiff confirmed that topic of discussion, indicating that Findling encouraged him to delay his leave until the April 15 testing deadline, but testified that he also

-1-

spoke to Findling about his concerns regarding the results of the window lift testing. According to plaintiff, Findling ordered him to alter the test results, and he responded by refusing and by threatening to report the testing issues to various governmental bodies. Findling, on other hand, denied those accusations, testifying that he never asked plaintiff to alter test results, and that plaintiff never raised his testing concerns at the April 5 meeting nor threatened to report.

Following the meeting, Findling divided testing responsibilities between plaintiff, Cassian Kock,[1] and Sell, because it had become clear to him that testing would not be completed on time. Then, on April 14, 2015, plaintiff was hospitalized for medical reasons and eventually approved for short-term disability through May 16, 2016, by CIGNA, defendant's benefits provider.

Under the impression that his short-term disability had subsequently been extended to June 16, 2016, on the basis of a recommendation made by Dr. Shuja Haque, plaintiff failed to return to work on May 17, 2016, and was terminated that same day for violation of defendant's leave policy. Katelyn Mozik, defendant's Senior Human Resources Generalist, testified that she independently made the decision to terminate.

Plaintiff then filed suit, claiming retaliation in violation of the WPA and Michigan public policy. In so doing, he alleged: (1) that his termination violated Michigan public policy because it was based, in part, on his refusal to alter test results, and (2) that defendant violated the WPA when it irrevocably changed the terms and conditions of his job, and terminated his employment, in response to his threats to report what he perceived to be testing issues. After discovery, defendant filed a motion for summary disposition of plaintiff's complaint pursuant to MCR 2.116(C)(10), asserting that plaintiff presented insufficient evidence to establish a prima facie case of employment discrimination in violation of either the WPA or Michigan public policy. Ultimately, the trial court granted defendant's motion pursuant to MCR 2.116(C)(10), holding that plaintiff failed to make out a prima facie case under the WPA, and that plaintiff's public policy claim fell squarely within the protections afforded under the WPA.[2]

---

[1] This name is spelled both Kock and Koch in the lower court record and on appeal.

[2] The trial court attempted to file its order the same day as the hearing, January 10, 2018, but it was not actually entered until January 18, 2018, because of a clerical error with the court's new e-filing system. Defendant filed a motion in the trial court to amend the entry date of the order, and to set aside the case evaluation notice, which had been filed between the date of the motion hearing and the entry of the order. Although plaintiff states, in the overview section of his brief on appeal, that he is challenging both the trial court's order granting summary disposition and the order amending the original entry date, he makes no argument whatsoever with regard to the latter challenge. Thus, we decline to address this issue. See *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007) ("A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim.").

## II. ANALYSIS

Plaintiff argues that the trial court erred when it granted defendant's motion for summary disposition. "Appellate review of the grant or denial of a summary-disposition motion is de novo, and the court views the evidence in the light most favorable to the party opposing the motion. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted).

> The party bringing a motion for summary disposition under MCR 2.116(C)(10) bears the initial burden of supporting its position with affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the nonmoving party to go beyond the pleadings to show the existence of a genuine issue of material fact. [*Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (citations omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

Plaintiff alleged in his complaint that in response to his threat to report testing issues, defendant diminished his job responsibilities[3] and terminated his employment in violation of the WPA. Under the WPA,

> [a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body . . . . [MCL 15.362; *West*, 469 Mich at 183.]

To establish a prima facie case, a plaintiff must show that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) 'a causal connection exists between the protected activity' and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (citation omitted). "Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action." *West*, 469 Mich at 184.

---

[3] Specifically, the complaint alleged that plaintiff threatened to report testing issues to the federal Department of Transportation, the Occupational Safety and Health Administration (OSHA), and the Securities and Exchange Commission (SEC). Further, under his WPA claim, plaintiff stated that defendant decided to terminate his employment and irrevocably change the terms and conditions because he threatened to report violations.

The trial court did not err when it held that plaintiff failed to establish a prima facie case under the WPA,[4] and granted defendant's motion for summary disposition. Plaintiff presented insufficient evidence from which a reasonable jury could find a causal connection between plaintiff's alleged protected activity and either adverse employment action.[5]

In support of his argument that defendant, specifically Findling, reassigned job responsibilities as punishment for his threat to report, plaintiff argues only that he had a reasonable belief the reassignment and threat to report were connected, citing to his affidavit, and that the temporal proximity between the two events created a genuine issue of material fact regarding causation. However, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed," *id*. at 186, and plaintiff otherwise produced insufficient evidence from which a reasonable jury could find that Findling reassigned testing responsibilities in response to plaintiff's alleged threat to report.

There is no question that reassignment occurred after the April 5 meeting between plaintiff and Findling, but Findling testified that he reassigned responsibilities in an effort to timely complete the testing, and no evidence suggests otherwise. Both plaintiff and Findling testified that they discussed plaintiff's medical issues at the meeting, and plaintiff admitted that Findling actually encouraged him to delay any leave until after the testing deadline. Findling expressed the same sentiment in an e-mail to Mozik on April 14, 2016, in which he said he needed plaintiff in the office, not on medical leave,[6] and to which Mozik responded: "Unfortunately, with medical cases, we are not able to approve/deny time based on business needs. We need to turn it over to the third party (Cigna) and treat it as a disability claim, and let

---

[4] Plaintiff includes the public policy claim in his statement of questions presented, but only cites law related to the WPA in his argument. Thus, he has not adequately challenged the dismissal of his public policy claim. *Nat'l Waterworks, Inc*, 275 Mich App at 265 (2007) ("A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim."). Additionally, the WPA is the exclusive remedy for these allegations. See *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804 (2011) (holding that where the WPA applies, it "provides the exclusive remedy for such retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity").

[5] We assume that the reassignment of testing duties was an adverse employment action for purposes of the opinion only. The simple assertion that what plaintiff would be testing was changed would not appear to constitute an adverse employment action. See *Peña v Ingham Co Road Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003).

[6] Findling said, specifically:

> I am open to any suggestions on how to best handle this situation. We must have Ha in the office every day for the next couple of weeks (plus overtime) until our current validation run is complete, and he cannot miss more than a few days between May and September due to the need for us to have the test system fully debugged and automated by the time our August 15 validation run is needed.

them decide medical necessity." And plaintiff entered the hospital that same day. From this evidence, a reasonable jury could only conclude that Findling lacked animosity toward plaintiff from any alleged threat to report, and actually wanted him to keep working—it was plaintiff's medical issues that prevented him from doing so and led to the reassignment of testing responsibilities. Thus, plaintiff failed to create a genuine issue of material fact that Findling diminished plaintiff's job responsibilities in response to plaintiff's threat to report.

The same is true with regard to termination. Plaintiff argues that the trial court failed to evaluate his claim under a "cat's paw" theory of liability and, regardless, the evidence presented demonstrates that Mozik knew Findling did not care for plaintiff and recommended termination on that basis. In so doing, he points to the same April 14 e-mail exchange between Findling and Mozik discussed above, perceived discrepancies between Findling's and Mozik's testimony, his good performance review in February 2016, and defendant's departure from its general method of progressive discipline.

A plaintiff may propose a "cat's paw" theory of liability where he or she seeks to hold "his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v Proctor Hosp*, 562 US 411, 415-416; 131 S Ct 1186; 179 L Ed 2d 144 (2011). However, we need not decide whether this theory of liability applies to WPA claims in Michigan because insufficient evidence existed to demonstrate a genuine issue of material fact with regard to causation.[7] In fact, the undisputed evidence presented establishes that Mozik neither knew[8] of plaintiff's alleged threat to report, nor made the decision to terminate with influence from Findling as a result of any such threat.

Plaintiff did receive a good performance review from Findling in February 2016, and the evidence demonstrates that defendant generally employed progressive discipline for its employees. But Mozik clarified that defendant's administration of discipline depends on the circumstances, and the policy itself corroborates her testimony.[9] Further, Mozik testified that she independently made the termination recommendation with no knowledge of any protected activity. Joseph Ruffolo, defendant's Vice President of Human Resources, testified that Mozik recommended termination based only on plaintiff's violation of the company's leave policy. And Findling testified that he never discussed plaintiff's threat to report with Mozik because no

---

[7] And, in any event, there is no evidence that Findling ever told Mozik of a desire to terminate plaintiff for the alleged threats. The evidence is in fact the opposite.

[8] "[I]t is reasonable to infer that the more knowledge the employer has of the plaintiff's protected activity, the greater the possibility of an impermissible motivation." *Debano-Griffin*, 493 Mich at 178.

[9] The Kostal Employee Handbook stated, "Although employment with KOA is based on mutual consent and both the employee and KOA have the right to terminate employment at will, with or without cause or advance notice, KOA may use progressive discipline at its discretion," and "KOA recognizes that there are certain types of employee problems that are serious enough to justify either a suspension, or, in extreme situations, termination of employment, without going through the usual progressive discipline steps."

threat was ever made, nor requested plaintiff's termination for any other reason. And these statements are supported by Findling's attempts, in his April 14 e-mail to Mozik, to keep plaintiff working. Accordingly, plaintiff failed to present sufficient evidence from which a reasonable jury could find a causal connection between plaintiff's alleged threat to report and his termination, and summary disposition was properly granted. *West*, 469 Mich at 184.[10]

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford

---

[10] Because we have held that plaintiff failed to present a prima facie case under the WPA, we need not address plaintiff's argument that defendant's proffered reason for termination was a pretext for illegal retaliation.