*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY ZELIASKO, also known as EMILY
ZELLIASKO,

    Plaintiff-Appellant,

v

ABDULKAREEM M. AL-DOROUGH, and TJ
TRUCKING, LLC,

    Defendants-Appellees.

UNPUBLISHED
June 16, 2022

No. 357397
Kent Circuit Court
LC No. 20-00640-NI

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff, Emily Zeliasko, appeals by right the trial court's order granting summary disposition to defendants, Abdulkareem M. Al-Dorough and TJ Trucking, LLC, pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we vacate the trial court's grant of summary disposition and remand to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises from a motor vehicle collision that occurred on February 17, 2019. On that date, while plaintiff was driving on I-96, she was struck in the rear by defendant when stopped for a traffic backup in front of her. Defendant Abdulkareem Al-Dorough was driving the truck owned by defendant TJ Trucking that struck plaintiff. The force from the rear collision forced plaintiff into the vehicle in front of her.

Plaintiff was taken by ambulance to the hospital. At the hospital, plaintiff was diagnosed with abrasions and a contusion of the chest wall. Over the course of the next several months, plaintiff was seen a number of times by various doctors, underwent 40 sessions of physical therapy, and had an MRI. The diagnosis from these doctor visits was generally "pain" in various areas, including her left shoulder and back. The MRI was "unremarkable." Approximately eight months after the accident, plaintiff was examined by Dr. Braden Boji, who diagnosed plaintiff with back spasms and an unstable left shoulder joint.

Plaintiff also sought treatment for alleged psychological issues stemming from the accident and was diagnosed with post-traumatic stress disorder. Plaintiff alleged that, as a result of the injuries suffered in the accident, she was unable to engage in a number of activities that she engaged in before the accident.

Plaintiff filed suit against defendants, alleging that Al-Dorough was negligent, causing serious and grievous injuries to plaintiff that constituted a serious impairment of body function that significantly affected her general ability to lead her normal life. As a result of these injuries, plaintiff alleged that she suffered both economic and noneconomic damages. Plaintiff also alleged that TJ Trucking, LLC, was liable for her injuries as owner of the truck driven by Al-Dorough.

Defendants moved for summary disposition pursuant to MCL 2.116(C)(10), arguing that plaintiff could not establish a threshold injury pursuant to MCL 500.3135. Defendants alleged that plaintiff had not shown that she suffered an objectively manifested impairment that impacted her general ability to lead her normal life. Plaintiff responded, alleging that she *had* suffered an objectively manifested impairment that affected her general ability to live her life. Plaintiff attached exhibits, including medical records, to this response. Following a hearing, the trial court granted defendants' motion and dismissed the case. This appeal ensued.

## II. ANALYSIS

A trial court's summary disposition ruling is reviewed de novo on appeal. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Under MCR 2.116(C)(10), a motion for summary disposition may be granted if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "We review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham*, 480 Mich at 111. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Of consequence to this case, all reasonable inferences must be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

Pursuant to the no-fault act, a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered . . . serious impairment of body function . . . ." MCL 500.3135(1);[1] see also *McCormick*, 487 Mich at 189-190. MCL 500.3135(5) provides:

> (5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

---

[1] The other types of potential threshold injury listed in the statute are not at issue in this case.

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

Our Supreme Court held in *McCormick* that there are three prongs that must be established to show a "serious impairment of body function": "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)." *McCormick*, 487 Mich at 215.

Here, the trial court determined that plaintiff's body soreness or tenderness did not rise to the level of a serious impairment of a body function. Additionally, the trial court found that the only evidence of any objectively manifested "aspects" of the accident were the superficial abrasions that were short-term. Based on these findings, the trial court dismissed the case.

In determining the first prong of *McCormick*, our Supreme Court emphasized that this inquiry looks at an objectively manifested impairment, not an objectively manifested injury. *Id*. at 197. Our Supreme Court differentiated between "injury" and "impairment" by noting that "while an injury is the actual damage or wound, an impairment generally relates to the effect of that damage." *Id*. "Accordingly, when considering an 'impairment,' the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.' " *Id*., quoting *DiFranco v Pickard*, 427 Mich 32, 67; 398 NW2d 896 (1986). Our Supreme Court relied on dictionary definitions of "impaired," which it found to mean "weakened, diminished, or damaged," or "functioning poorly or inadequately." *Id*. "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018).

Such a physical basis exists in the records from an examination by Dr. Boji who noted that plaintiff had an "unstable left shoulder Joint [sic] with likely recurring episodes of subluxation," and that plaintiff had periscapular muscle spasms. At the motion for summary disposition, plaintiff argued that the doctor's note that plaintiff's left shoulder was tender was a physical basis for plaintiff's subjective complaint of pain. The trial court acknowledged there was objective evidence of injuries suffered by plaintiff in the accident, but the trial court determined that the tenderness experienced by plaintiff did not rise to the level of a serious impairment of body function. The trial court emphasized that the relevant inquiry is whether there was objective manifestation of an

impairment and that was missing in this case. The trial court did not refer, however, to the medical records from Dr. Boji that found that plaintiff had an unstable left shoulder joint and back spasms.

However, our examination of the record leads us to differ with the trial court's conclusions. Contrary to the trial court's determination, there is a genuine issue of material fact in this matter. The medical records from plaintiff's visit to Dr. Boji indicated muscle spasms and an unstable shoulder joint, an objectively manifested impairment. We note that defendants caution us to be skeptical of Dr. Boji's diagnoses as it occurred eight months after the accident, and after plaintiff had been examined by several other doctors who did not provide such a diagnosis. Additionally, the medical record does not explicitly state that this impairment was a result of the vehicle accident. But it is a reasonable inference that this impairment was a result of the accident when plaintiff complained of left shoulder and back issues on a regular basis from the time of the accident to the time of Dr. Boji's examination. As previously noted, all reasonable inferences must be drawn in favor of the nonmoving party. *Dextrom*, 287 Mich App at 415-416. When making all reasonable inferences in plaintiff's favor, we conclude there is a genuine issue of material fact whether the left shoulder instability and back spasms noted by Dr. Boji were caused by the accident. Review of the medical evidence reveals that plaintiff had been complaining of left shoulder pain since the accident occurred. Accordingly, we conclude that the trial court erred in finding to the contrary.

Next, plaintiff argues on appeal that she presented a number of activities that she either could not do as a result of the injuries sustained in the accident or that were negatively affected by the collision. The trial court, having found there was no objectively manifested impairment of an important body function that affected plaintiff's general ability to lead her normal life, did not reach this issue.[2]

If the injured person demonstrates that he or she has an objectively manifested impairment of an important body function, the final prong is whether that objectively manifested impairment affects the person's general ability to lead his or her normal life. *McCormick*, 487 Mich at 195. This analysis requires "a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id*. at 202. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. In this inquiry, the injured person's general ability to lead his or her normal life does not need to be "destroyed," but merely affected. *Id*. "Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident

---

[2] Because the trial court found that plaintiff could not establish an objectively manifested impairment, it was unnecessary for the trial court to resolve this issue. If an impairment is not objectively manifested, then it cannot qualify as a "serious impairment of body function," regardless of whether it affected the injured person's ability to lead his or her normal life. MCL 500.3135(5) (requiring that all the listed requirements be met in order for an impairment to be considered a "serious impairment of body function").

activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id.*

"[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id.* at 203. "[T]he statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id.* "[T]he plain text of the statute and these definitions demonstrate that the common understanding of to 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living." *Id.* at 202.

Here, plaintiff testified that at work, she is unable to lift dogs or other items, or help with cleaning. According to plaintiff, she is only able to drive short distances because of her back and can only drive in ideal conditions because she is too anxious to drive in poor weather. Plaintiff alleged that she has missed family vacations because she could not drive. Specifically, she said that she missed a trip to Traverse City in January 2020 because she was scared to drive in the snow because it reminded her of the conditions on the day of the accident. Plaintiff also testified that she was unable to vacuum or sweep for several months following the accident. Further, plaintiff testified that she could not sleep the same way she did before the accident.

Plaintiff also testified that there were recreational activities that she could no longer do as a result of the accident. Plaintiff said that her shoulder pops out of place when she golfs, and she now chooses not to golf to avoid the shoulder pain it causes. She also experiences pain in her shoulder while skiing, and she has not cross-country skied since the accident because of her shoulder. She is unable to engage in agility running with her dog. Plaintiff said that she cannot participate in Zumba exercise classes. Finally, plaintiff testified that she has back pain if she sits for too long and that lifting a backpack causes severe pain.

Defendants acknowledge that plaintiff's life was affected at least somewhat and for some time as a result of the accident. Defendants' argument on this issue is based on their belief that the effects to plaintiff's life were not serious enough nor lasted long enough. Defendants characterize the holding in *McCormick* to be that the plaintiff demonstrated that the impairment affected his ability to lead his normal life because his life before the accident and after the accident were "significantly" different. Although the life of the plaintiff in *McCormick* was significantly different before and after the accident, we glean nothing in *McCormick* that requires a finding of *significant* changes in pre- and post-accident life. See *id.* at 185. Rather, *McCormick* merely requires *some* difference. See *id.* at 202-203. Defendants have cited no authority for the proposition that plaintiff's life must by *substantially* impacted.

Defendants additionally argue that even if plaintiff's impairment had some effect on her ability to complete certain activities, it was nevertheless proper for the trial court to determine as a matter of law that plaintiff's impairments did not affect her general ability to live her normal life. Defendants' contend that there is a certain temporal minimum that must be met to satisfy this prong of the *McCormick* test, or some established minimum amount of effect on the injured person's life. But any such suggestion that, as a matter of law, there is a certain minimum period or minimum amount of affect that must be met to satisfy the third prong of the *McCormick* analysis does not have a basis in either *McCormick* or the language contained in MCL 500.3135. Rather,

*McCormick* stands for the proposition that the impairment need only to have some effect on the injured person's ability to lead their normal life, which is measured by comparing the person's pre- and post-accident lives. See *McCormick*, 487 Mich at 202.

Contrary to defendants' arguments, *McCormick* creates a case-by-case inquiry that requires a subjective, person- and fact-specific analysis. See *id*. The impairment need only have some effect on the person's general ability to live their life, and there is no temporal limitation. See *id*. at 202-203.

Viewing the evidence in the light most favorable to plaintiff, there is a genuine issue of material fact whether her back and shoulder impairment affected her ability to complete tasks at work. Although plaintiff was by all accounts still able to work, she testified that her work was affected. As our Supreme Court has stated, plaintiff's ability to engage in these activities need not be destroyed, but merely affected. *Id*. at 202, and a reasonable trier of fact could find that plaintiff's impairments affected her general ability to live her normal life.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ Kathleen Jansen