**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 22, 2003**

CALVIN WEST and MARGO ANN WEST,
Jointly and Severally,
    Plaintiffs-Appellees
    and Cross-Appellants,

v                                              No. 121003

GENERAL MOTORS CORPORATION, RANDY
KOYAL, KEVIN SPARKS and JOHN TATE,
Jointly and Severally,
    Defendants-Appellants
    and Cross-Appellees,
and

JIM REEVES,
    Defendant.

_____

**PER CURIAM**

The circuit court granted defendant General Motors' motion for summary disposition and dismissed plaintiff's[1] complaint, which alleged a count under the Whistleblowers' Protection Act, MCL 15.361 *et seq.,* and counts of assault and

---

[1] Plaintiff Margo Ann West's derivative claim is for loss of consortium. For ease of reference, in this opinion we refer to plaintiff in the singular.

battery, wrongful discharge, race discrimination, retaliation for reporting acts of discrimination, and loss of consortium. The Court of Appeals reversed the dismissal of plaintiff's whistleblower count and affirmed the remainder of the circuit court's ruling.

Defendant[2] seeks to appeal the part of the Court of Appeals decision reinstating plaintiff's whistleblower count, while plaintiff seeks to cross-appeal the part of the Court of Appeals decision that affirmed the dismissal of the balance of his complaint. Because plaintiff failed to come forward with evidence supporting the causation element of his whistleblower claim, we reverse that aspect of the Court of Appeals decision and reinstate the circuit court's order of summary disposition in favor of defendant. We have also considered plaintiff's application for leave to cross-appeal, and that application is denied because we find no merit in the issues raised by plaintiff.

I

Plaintiff Calvin West worked as a maintenance supervisor for defendant General Motors. He was a salaried employee and was responsible for completing his own time sheet. Plaintiff was warned several times in 1996 and in February 1997 about

---

[2] Defendant General Motors is the only defendant involved in this appeal.

misrepresenting the time he actually worked. Nevertheless, plaintiff reported four extra hours of overtime on his time sheet for May 22, 1997. His supervisors learned of this overstatement and, after an investigation, plaintiff was disciplined on June 4, 1997. Plaintiff was prohibited from working any overtime, and he was required to use the salaried-employee entrance and to "swipe" his identification badge at the entrance each time he entered or left the plant. In addition, plaintiff was advised, orally and in writing, that reporting time that was not actually worked constituted fraudulent conduct and could result in termination of his employment.

Effective August 11, 1997, plaintiff was transferred from the morning shift to the afternoon shift.[3] Plaintiff accordingly worked for different supervisors. In September 1997 plaintiff was again allowed to work overtime. On October 16, 1997, plaintiff reported two hours of overtime that he did not work. An investigation of this incident led to the termination of plaintiff's employment on January 8, 1998, because of plaintiff's repeated violations of the employer's

---

[3] According to defendant, plaintiff was transferred to the afternoon shift because the morning shift required a maintenance supervisor who could work overtime.

policies for reporting time worked.[4]

While plaintiff was still working on the morning shift, an incident occurred on May 4, 1997, involving a union committee person named Jim Reeves. Plaintiff entered a room where Reeves and others were in conference. When plaintiff did not leave the room as Reeves ordered, there was physical contact between plaintiff and Reeves. Plaintiff claims that he was shoved by Reeves; Reeves claims that when he stood up from his desk his stomach brushed plaintiff.

Plaintiff reported to plant security that Reeves had assaulted him. In addition, plaintiff claims he telephoned the Romulus police and reported the assault.[5] Plaintiff also asserts that he advised his immediate supervisor, Randall Koyal, and his area supervisor, John Tate, that he had reported the assault to the police. Plaintiff characterized Koyal's response to being told about the report to the police

---

[4] Plaintiff initially acknowledged that he had not worked the overtime on October 16, but said he had worked it the next day. Later, he asserted that he actually worked the overtime hours that he reported on October 16 on that date. However, his supervisor stated that plaintiff left after completing an eight hour shift and did not return. In addition, no one else saw plaintiff during the two hours at issue.

[5] According to plaintiff, the police told him to file a written complaint. Plaintiff never filed such a complaint, nor did he otherwise follow up with the police.

4

as "nonchalant."[6]  Plaintiff said that he could not discern Tate's response upon learning that plaintiff had contacted the police, but Tate seemed to be upset that the incident between plaintiff and Reeves had occurred.[7]

In his complaint, plaintiff claimed that his rights under the Whistleblowers' Protection Act were violated because he was retaliated against and discriminated against for reporting the Reeves assault to the police.  Plaintiff's complaint alleged that after the report, both Tate and Koyal treated him differently and retaliated by, among other things, unfairly accusing him of time-sheet violations, transferring him to a different shift, and terminating his employment.  The circuit court granted defendant summary disposition regarding this count, reasoning that plaintiff did not establish a prima facie case because he failed to present evidence of a causal connection between his report to the Romulus police and any adverse employment action.[8]  The circuit court also concluded

---

[6] Koyal testified at his deposition that he did not learn that plaintiff called the police until he received notice of this lawsuit.

[7] At his deposition, Tate recalled plaintiff being upset about the incident with Reeves, but Tate was not asked about whether plaintiff said anything about making a report to the police.

[8] The adverse employment actions specifically discussed by the circuit court were (1) the "overtime restriction" imposed in June 1997, (2) the transfer to the afternoon shift, and (3) the decision to terminate employment.

that, even if plaintiff had established a prima facie case, the employer had shown a legitimate reason for its actions.

The Court of Appeals found that a factual issue existed regarding whether there was a causal connection between plaintiff's telephone call to the Romulus police and the subsequent adverse employment actions. The Court accordingly reversed the summary-disposition order and remanded the case for further proceedings on plaintiff's whistleblower count. The Court of Appeals did not address the circuit court's finding that there were legitimate reasons for the employment actions.

## II

Defendants' summary-disposition motion regarding the whistleblower claim was brought under MCR 2.116(C)(10) (no genuine issue of material fact). Appellate review of the grant or denial of a summary-disposition motion is de novo, and the court views the evidence in the light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 118, 120; 597 NW2d 817 (1999). Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue

upon which reasonable minds might differ. *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997); *Quinto v Cross & Peters Co*, 451 Mich 358, 369; 547 NW2d 314 (1996).

III

Plaintiff's whistleblower claim is brought under MCL 15.362, which states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To establish a prima facie case under this statute, a plaintiff must show that (1) the plaintiff was engaged in protected activity as defined by the act,[9] (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. *Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998);

---

[9] For the purpose of this opinion, we assume without deciding that plaintiff called the Romulus police, and that doing so is a protected activity. See *Dudewicz v Norris Schmid, Inc*, 443 Mich 68; 503 NW2d 645 (1993).

7

*Shallal, supra* at 610.

Plaintiff claims that, because of his report to the police, he was disciplined when he was barred from overtime, required to swipe his identification badge, transferred to the afternoon shift, and discharged.  However, our review of the record reveals no evidentiary support from which a reasonable jury could find a causal connection between plaintiff's report to the police and these employment actions.

Plaintiff's case rests on the factual point that he advised supervisors Koyal and Tate that he had reported the assault to the police.  That assertion, by itself, is not enough to raise a reasonable inference that plaintiff was retaliated against or discriminated against on the basis of the report.  It does nothing to establish a causal nexus between plaintiff's contacts with his supervisors and any subsequent employment action.

Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action.  For example, in *Shallal*, the plaintiff failed to establish the necessary causal connection because she knew her discharge was imminent before the protected activity on which she based her whistleblower claim, and in *Roberson v Occupational Health Centers of America, Inc*, 220 Mich App 322; 559 NW2d 86 (1996),

8

the plaintiff failed to show a causal connection because the evidence did not show that the employer knew about the plaintiff's filing of a complaint with the Occupational Safety and Health Administration until after she was discharged.

The most that plaintiff demonstrates here is that he was disciplined, and eventually discharged, after he reported to the police that Reeves had assaulted him. To prevail, plaintiff had to show that his employer took adverse employment action *because of* plaintiff's protected activity, but plaintiff has merely shown that his employer disciplined him *after* the protected activity occurred. Plaintiff had to demonstrate that the adverse employment action was in some manner influenced by the protected activity, but has failed to make such a demonstration. The evidence does not show that either of the supervisors, whom plaintiff allegedly informed about the call to the police, viewed the call as a matter of any consequence. Nor was either supervisor involved in the decision to discharge plaintiff.[10] There is no evidence that Koyal or Tate gave even a second thought to plaintiff's report to the police. Plaintiff did not recall Tate saying anything when he learned about the police report, although he did seem

---

[10] After he was transferred, and at the time he reported the unworked overtime leading to his discharge, plaintiff was working under a different supervisor. Thus, it cannot be assumed that Koyal and Tate were involved in the decision to terminate plaintiff's employment.

9

upset that the incident with Reeves occurred, and plaintiff testified that Koyal's reaction was "nonchalant."

Although the employment actions about which plaintiff complains occurred after his report to the police, such a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed.[11] *Nguyen v City of Cleveland*, 229 F3d 559 (CA 6, 2000) (retaliation for claim of discrimination based on national origin); *Scroggins v Univ of Minnesota*, 221 F3d 1042 (CA 8, 2000) (retaliation for race-discrimination claim); *Cooper v North Olmsted*, 795 F2d 1265 (CA 6, 1986) (retaliation for race- and sex-discrimination claims); *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 662; 653 NW2d 625 (2002) (retaliation for alleged whistleblower activity). Plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action.[12]

---

[11] Plaintiff's whistleblower claim is analogous to an antiretaliation claim based on other prohibited kinds of employment discrimination. *Shallal, supra* at 617.

[12] Relying merely on a temporal relationship is a form of engaging in "the logical fallacy of post hoc ergo propter hoc (after this, therefore in consequence of this)" reasoning.

A case in which a close temporal relationship supported the plaintiff's claim is *Henry v Detroit*, 234 Mich App 405; 594 NW2d 107 (1999). But unlike plaintiff, the plaintiff in *Henry* also presented evidence that his superior expressed clear displeasure with the protected activity engaged in by the plaintiff. In contrast to *Henry*, plaintiff has not shown any reaction or conduct on the part of his supervisors that reasonably suggests that they were upset by the fact that plaintiff reported an assault to the police. Moreover, contrary to the view of the Court of Appeals, the evidence does not show that plaintiff's record was "impeccable" or "unblemished" before the Reeves incident or that the discipline imposed was seemingly undeserved as it was in *Henry*.[13] The fact that a plaintiff engages in a "protected activity" under the Whistleblowers' Protection Act does not immunize him from an otherwise legitimate, or unrelated, adverse job action.

The only evidence plaintiff has shown other than the temporal sequence of events is that one of the two supervisors he notified was nonchalant. This does not amount to evidence

_____

*Rogers v Detroit*, 457 Mich 125, 168; 579 NW2d 840 (1998) (TAYLOR, J., dissenting), majority opinion overruled by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

[13] Unpublished opinion per curiam, issued January 25, 2002 (Docket No. 224408), pp 1, 4.

from which a reasonable juror could conclude that any adverse employment action directed at plaintiff was related to the police report lodged by plaintiff.

With regard to the employment-discharge decision in particular, plaintiff has presented no evidence connecting his discharge to his report to the police. There is no evidence that the persons conducting the investigation that led to plaintiff's discharge or the persons who made the discharge decision were even aware that plaintiff called the police. The supervisors (Koyal and Tate), whom plaintiff claims he told about the police report, were not involved in the discharge decision.

The Court of Appeals erred in finding that contested facts and permissible inferences present a factual issue for a jury in this case.[14]  There is nothing more than pure conjecture and speculation to link plaintiff's call to the police to any subsequent adverse employment action.[15]

---

[14] As the preceding analysis makes clear, under the applicable standard, which requires us to view the evidence in the light most favorable to plaintiff, plaintiff has failed to establish a prima facie claim because he has not demonstrated a causal connection—an essential element of a claim under the Whistleblowers' Protection Act—between the protected activity and the adverse employment action.

[15] To the extent that the Court of Appeals rested its decision on its interpretation of the principle that "remedial statutes are to be liberally construed in favor of the persons intended to be benefitted," we simply note that our obligation is to accurately construe a statute according to its terms and

12

Plaintiff did not present evidence that would allow a reasonable juror to find a causal connection between the police report made by plaintiff and the subsequent employment decisions affecting plaintiff.  Plaintiff therefore failed to establish a prima facie case under the Whistleblowers' Protection Act.  We reverse in part the judgment of the Court of Appeals and reinstate the circuit court order granting defendant summary disposition on plaintiff's whistleblower claim.  In all other respects the Court of Appeals decision is affirmed.  MCR 7.302(F)(1).

Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

---

that "liberally construing" a statute does not transform mere speculation into a genuine issue of material fact.

CALVIN WEST and MARGO ANN WEST,
jointly and severally,

    Plaintiffs-Appellees,
    Cross-Appellants,

v                                                       No. 121003

GENERAL MOTORS CORPORATION, RANDY
KOYAL, KEVIN SPARKS, and JOHN TATE,
jointly and severally,

    Defendants-Appellants,
    Cross Appellees,

and

JIM REEVES,

    Defendant.
_____

KELLY, J. (*dissenting*).

    The majority holds that plaintiff presented insufficient evidence to support his claim under the Whistleblowers' Protection Act (WPA), MCL 15.362.  In my view, quite the contrary is true.  Plaintiff presented entirely sufficient evidence to reach the jury on this claim.  Therefore, I dissent.

I

    When reviewing a ruling on a defendant's motion for

summary disposition, we must view the evidence in the light most favorable to the plaintiff, the nonmoving party. *Maiden v Rozwood*, 461 Mich 109; 597 NW2d 817 (1999). The majority articulates, but neglects to follow, this mandate in ruling for defendant.

To satisfy the elements of his claim, plaintiff must present evidence that (1) he was engaged in protected activity as defined by the act, (2) he was discharged or discriminated against, and (3) a causal link exists between the protected activity and the discharge or adverse employment action. The majority concedes that plaintiff established the first two elements, but holds that he has not established the third, causation. *Ante* at 8.

One method of determining whether an element has been established is to ask if a party has raised a material question of fact about it. The majority acknowledges that "[a] genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Ante* at 6, citing *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997); *Quinto v Cross & Peters Co*, 451 Mich 358, 369; 547 NW2d 314 (1996).

In this case, the record reveals several allegations from which, if they were to be proven, a factfinder could infer

2

causation. First, defendant did not discharge plaintiff until after he "blew the whistle" by reporting the shoving incident to the police. Defendant premised plaintiff's termination of employment on his time sheet problems. Plaintiff had a nearly perfect thirty-year employment history with defendant. However, during the year preceding the whistleblowing, defendant had grown concerned about plaintiff's time sheet errors. Nonetheless it took no action. Then, after the whistleblowing, for the first time, defendant acted against plaintiff allegedly because of the time sheet problems. The lack of action preceding the police report supports an inference that the report caused the adverse employment actions taken afterward.

Second, plaintiff denied that the time sheet that led to his firing contained overtime that he did not work. If the trier of fact should find that plaintiff *did* work the two hours in question, it follows that plaintiff was wrongfully discharged. It could be validly inferred that the wrongful discharge constituted retaliatory action against plaintiff for his whistleblowing. Also, a wrongful discharge shows that there was not the legitimate, nondiscriminatory reason for firing plaintiff that defendant asserts existed.

## II

The majority sidesteps the evidence that constitutes the

issues of fact by construing the facts in the light most favorable to defendant. Construing them correctly, in plaintiff's favor, it becomes evident that a question of fact about causation exists in this case. Accordingly, I would affirm the unanimous decision of the Court of Appeals to reverse the summary disposition on the whistleblower count and remand the case to the trial court.

Marilyn Kelly
Michael F. Cavanagh

4