*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOORINGS OF LEELANAU, LLC,

Petitioner-Appellant,

v

CITY OF TRAVERSE CITY,

Respondent-Appellee.

UNPUBLISHED
July 29, 2021

No. 353911
Tax Tribunal
LC No. 19-001535-TT

Before: FORT HOOD, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Petitioner appeals as of right the order of the Michigan Tax Tribunal holding that respondent was entitled to uncap the taxable value of petitioner's real property, which included 92 parcels of land adjoining Traverse City. Petitioner, a limited-liability company, argues that no transfer of ownership occurred when two of its three members relinquished their membership in the company, and that uncapping was therefore impermissible. We affirm.

## I. BACKGROUND

MI Moorings, LLC (MIM) was established by Mark Johnson and Jason Warren in 2014 for the purpose of purchasing, managing, and selling real estate. The Moorings of Leelanau, LLC (TML) was subsequently established by MIM, Robert Brick, and Edward W. Lockwood for the purpose of purchasing, developing, and selling the subject property. MIM owned a 42% interest in TML, and Brick and Lockwood each owned a 29% interest in TML. The subject property was at all relevant times owned entirely by TML.

A dispute arose between the members of MIM and the members of TML, resulting in litigation. This litigation was resolved when the parties executed a settlement agreement under which Brick and Lockwood agreed to relinquish their ownership rights in TML in exchange for payments totaling $2,575,000. As a result of this agreement, MIM became the sole owner of TML. Following this transaction, respondent uncapped the taxable value of the subject property, and petitioner challenged this decision before the Tax Tribunal.

-1-

The tribunal granted summary disposition under MCR 2.116(C)(10) in favor of respondent and ordered a partial uncapping of the property's taxable value. Subsequently, the tribunal granted respondent's motion for reconsideration and held that respondent was entitled to uncap the entire taxable value of the property. This appeal followed.

II. DISCUSSION

Petitioner argues that the tribunal erred by granting summary disposition in favor of respondent because no transfer of ownership occurred. We disagree.

"Review of a decision by the [Tax Tribunal] is very limited." *Drew v Cass Co*, 299 Mich App 495, 498; 830 NW2d 832 (2013). "Absent fraud, our review of [the tribunal's] decisions is limited to determining whether the [tribunal] erred in applying the law or adopted a wrong legal principle." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 627; 752 NW2d 624 (2008). We review de novo the tribunal's interpretation and application of statutes. *Id.* See also *Stirling v Leelanau Co*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 353117); slip op at 2 (" '[R]espectful consideration' is given to the [tribunal's] construction of a statute, but ultimately the meaning of a statute is a legal question to which we owe no deference.").

We review de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition should be granted under MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

This Court's "primary task in construing a statute . . . is to discern and give effect to the intent of the Legislature." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). "The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent." *Drew v Cass Co*, 299 Mich App 495, 499; 830 NW2d 832 (2013). "When statutory language is unambiguous, judicial construction is not required or permitted because the Legislature is presumed to have intended the meaning it plainly expressed." *People v Campbell*, 329 Mich App 185, 193-194; 942 NW2d 51 (2019).

The capping and uncapping of a property's taxable value is established by Article IX of the Michigan Constitution, which provides in relevant part:

> For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33[1] of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred. When

---

[1] " 'General Price Level' means the Consumer Price Index for the United States as defined and officially reported by the United States Department of Labor or its successor agency." Const 1963, art 9, § 33.

ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. [Const 1963, art 9, § 3.]

This provision of the Constitution is implemented by section 27a of the General Property Tax Act (GPTA), MCL 211.1 *et seq*. MCL 211.27a provides the method for calculating a property's taxable value:

> (2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> (a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. . . .
>
> (b) The property's current state equalized valuation.
>
> (3) Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer.

MCL 211.27a(6) contains a definition of "transfer of ownership" and provides in relevant part:

> As used in this act, "transfer of ownership" means the conveyance of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest. Transfer of ownership of property includes, but is not limited to, the following:
>
> * * *
>
> (h) Except as otherwise provided in this subdivision, a conveyance of an ownership interest in a corporation, partnership, sole proprietorship, *limited liability company*, limited liability partnership, or other legal entity *if the ownership interest conveyed is more than 50%* of the corporation, partnership, sole proprietorship, limited liability company, limited liability partnership, or other legal entity. . . . [Emphasis added.]

In *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 696; 714 NW2d 392 (2006), this Court considered "whether the sale of all the membership interests in a limited liability corporation (LLC) that owns all the membership interests in another LLC that owns real property constitutes a 'transfer of ownership' of the property" for the purposes of the uncapping provisions of the GPTA. This Court held that "[b]y the plain language of the statute, the transaction that occurred was unambiguously a 'transfer of ownership' because it transferred ownership of the property at issue from buyer to seller, by transferring ownership of the membership interests in the LLC." *Id*. at 70.

Here, it is undisputed that, at all relevant times, the subject property belonged to TML. Prior to the settlement agreement, Brick and Lockwood had a combined 58% ownership interest in TML. Pursuant to the settlement agreement, they relinquished their interests in TML in exchange for payments totaling $2,575,000, and MIM became the sole owner of TML. In other words, Brick and Lockwood transferred their 58% collective ownership interest in TML to MIM. This exceeded the 50% threshold that is set out in MCL 211.27a(6)(h). Under this Court's holding in *Signature Villas*, 269 Mich App at 700-701, by transferring a 58% ownership interest in TML to MIM, Brick and Lockwood also transferred a 58% ownership interest in the subject property to MIM. Thus, the uncapping of the subject property for tax purposes was permissible.

Petitioner suggests that application of MCL 211.27a(6)(h) in this context runs afoul of the Michigan Constitution. However, petitioner's argument is based on the fact that the Constitution allows uncapping only if there has been a "transfer" of ownership, 1963 Const, art 9, § 3, and petitioner simply reasserts its argument that no transfer of ownership occurred when Brick and Lockwood withdrew from TML. For the same reasons we reject this argument in the context of the GPTA, we also reject this argument in the context of the Constitution. See Const 1963, art 9, § 3 ("When ownership of the parcel of property is transferred *as defined by law*, the parcel shall be assessed at the applicable proportion of current true cash value."). Again, by withdrawing from TML, Brick and Lockwood transferred their collective 58% ownership interest to MIM. Accordingly, we can discern no error of law on the part of the tribunal.

Affirmed.


/s/ Karen M. Fort Hood
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher