*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARLO P. GINOTTI, as Trustee of the THE
GINOTTI LIVING TRUST,

UNPUBLISHED
January 26, 2023

    Plaintiff/Counterdefendant-Appellant,

v

No. 360522
Oakland Circuit Court
LC No. 2020-183654-CH

MICHAEL LIESS and LINDA LIESS,

    Defendants/Counterplaintiffs-
    Appellees.

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

In this boundary dispute, plaintiff/counterdefendant Carlo P. Ginotti, as trustee of the Ginotti Living Trust, appeals as of right the trial court's final judgment and order that denied plaintiff's motion for summary disposition, granted summary disposition in favor of defendants/counterplaintiffs Michael and Linda Liess, and quieted title to the "Disputed Area"[1] in favor of defendants. Plaintiff argues that the trial court erred by concluding that defendants obtained title to the Disputed Area by adverse possession and acquiescence for the statutory period. Instead, plaintiff contends that the trial court should have quieted title in his favor. We affirm the trial court's order with respect to quieting title in defendants' favor to the concrete parking area and landscaping display, reverse the trial court's order quieting title to the remainder of the Disputed Area, and remand for further proceedings.

---

[1] Unless otherwise specified, we use "Disputed Area" to refer to the triangular area identified in the Kem-Tec survey (produced below) to which the trial court quieted title in defendants' favor.

## I. BACKGROUND

The Ginotti family has owned a vacant lot, Lot 40 (hereinafter, "Ginotti Property"), in White Lake Township, Michigan for over 50 years. In 1971, Mary Ginotti sold the Ginotti Property to Philip and Barbara Ginotti. Philip and Barbara later conveyed the property to the Ginotti Living Trust, naming themselves as trustees.[2] They passed away in 2019, and plaintiff took over as trustee. East of the Ginotti Property is Lot 41 (hereinafter, "Liess Property"), which Michael purchased in September 1990. At that time, sections of a red fence existed between the Liess and Ginotti Properties. Michael removed the red fence at a later point, likely around the mid-1990s. Michael conveyed the Liess Property to himself and his wife, Linda, in August 1993. The properties run along Longcroft Drive to the north, with Long Lake on the south.

In 1995, defendants constructed additions on their home on the Liess Property after obtaining variances from White Lake Township. In April 1996, defendants hired a contractor to replace the gravel parking area, which existed at the time of Michael's 1990 purchase, with a concrete parking area. That same year, defendants installed an irrigated sprinkler system along the western side of their home. Defendants also added a landscaping installation next to the parking area with hosta plants. Sometime later, defendants placed a small portion of white picket fence behind the hostas to control a grapevine plant on the Ginotti Property. The white picket fence has since been removed. Throughout this period of construction in the 1990s, defendants relied on or obtained four mortgage surveys. Mortgage surveys from 1990, 1994, and 1995 mortgage surveys each identify a 19-foot gravel area along Longcroft Drive on the north side of the Liess Property. These three mortgage surveys also state that the surveys are "not to be used for the purpose of establishing property lines . . . ."

More recently, the parties obtained certified surveys to determine the boundary lines between the properties. Philip and Barbara retained Dekeyser Surveying in 2018 to conduct a survey. The survey shows a portion of landscaping from the Liess Property encroaching on the Ginotti Property, as well as a sliver of concrete near Longcroft Street that encroaches on the Ginotti Property. In November 2020, defendants retained a certified survey from Kem-Tec and surveyor Daniel Jackson. The Kem-Tec survey focuses in on the Liess Property and shows the concrete and landscaping encroachments identified in the Dekeyser survey. The Kem-Tec survey also identifies a larger "Disputed Area" running along the entire boundary between the Ginotti and Liess Properties. This triangular area along the western boundary of the Liess Property is the subject of significant dispute on appeal. For ease of understanding the dispute, we produce the Kem-Tec survey below.

---

[2] Throughout this opinion, we will use first names to distinguish between individuals sharing the Ginotti and Liess surnames.

-2-



EXHIBIT

JACKSON #1  04-30-21 ALB

# CERTIFIED SURVEY

**NOTE:**
A CURRENT TITLE POLICY HAS NOT BEEN FURNISHED AT TIME OF SURVEY, THEREFORE EASEMENTS AND/OR ENCUMBRANCES AFFECTING SUBJECT PARCEL MAY NOT BE SHOWN.

NORTH

SCALE: 1"=20'

0'    10'    20'

LONGCROFT DR.
60' RIGHT OF WAY
ASHPALT

FOUND 1/2 REBAR

FENCE

FOUND 1/2" REBAR

N61°57'00"E(R&M)
75.00'(R&M)

15.0'

LAMP POST

CONC.

CONC.

GATE

10.67' (M)

FOUND 1/2" PIPE

FOUND 1/2 REBAR W/CAP #30080

SEPTIC TANK

DISPUTED AREA    24"

LANDSCAPING CROSSES PROP. LINE W ±3.6'

24"

LANDSCAPING

BLDG. COLUMN (TYP.)

4.6'

**PROPERTY DESCRIPTION:**
LOT 41, LONGCROFT No. 1, PART OF THE SOUTH 1/2 OF THE SOUTHEAST 1/4 OF SECTION 35, TOWN 3 NORTH, RANGE 8 EAST, WHITE LAKE TOWNSHIP, OAKLAND COUNTY, MICHIGAN, AS RECORDED IN LIBER 67 OF PLATS, PAGE 19 OF OAKLAND COUNTY RECORDS.

LOT 40

#9049
2-STORY
RESIDENCE

LOT 42

165.18'(R)  165.85'(R&M)
S03°00'30"E(M)

3.7'

GATE

N11°07'45"W(M)
152.30'(M)

155.74'(R&M)

DECK

CONC. CROSSES PROP. LINE E ±0.8'

**DESCRIPTION OF DISPUTED AREA:**
PART OF LOT 40, LONGCROFT NO. 1, A SUBDIVISION OF PART OF THE SOUTH 1/2 OF THE SOUTHEAST 1/4 OF SECTION 35, TOWN 3 NORTH, RANGE 8 EAST, WHITE LAKE TOWNSHIP, OAKLAND COUNTY, MICHIGAN, AS RECORDED IN LIBER 67 OF PLATS, PAGE 19 OF OAKLAND COUNTY RECORDS, DESCRIBED AS FOLLOWS: POINT OF BEGINNING BEING THE NORTHEAST CORNER OF SAID LOT 40, THENCE SOUTH 07 DEGREES 22 MINUTES 15 SECONDS EAST ALONG THE COMMON LINE OF LOTS 40 AND 41, 155.74 FEET; THENCE NORTH 11 DEGREES 07 MINUTES 45 SECONDS WEST, 152.30 FEET TO THE NORTHERLY LINE OF SAID LOT 40; THENCE NORTH 61 DEGREES 57 MINUTES 00 SECONDS EAST ALONG SAID NORTHERLY LINE, 10.67 FEET TO THE POINT OF BEGINNING; CONTAINING ±777 SQUARE FEET OF LAND.

STEPS    STEPS

DECK

WELL

S07°22'15"E(R&M)

LOT 41

61.8'

FENCE

**LEGEND**

● SET 1/2" REBAR WITH CAP #53499
◉ FOUND MONUMENT (AS NOTED)
(M) MEASURED DIMENSION
(R) RECORD DIMENSION

SHED
1.7'

FOUND 1/2 REBAR

60.00'(R)  59.97'(M)
S66°17'30"W(R)
S66°18'26"W(M)

SEA WALL

STEPS

FOUND 1/2 REBAR W/CAP #30080

SEA WALL

LONG LAKE

FOUND 1/2" PIPE

STATE OF MICHIGAN
DANIEL J. JACKSON
PROFESSIONAL SURVEYOR No. 53499
LICENSED PROFESSIONAL SURVEYOR
12/07/20

I CERTIFY THAT THE REQUIREMENTS FOR 1970 PA 132, MCL 54.213 HAVE BEEN MET, AND THAT THE RELATIVE POSITIONAL PRECISION IDENTIFIED FOR THIS SURVEY AND SHOWN ON THE MAP ARE WITHIN THE LIMITS ACCEPTED BY THE PRACTICE OF PROFESSIONAL SURVEYING.

DANIEL J. JACKSON, P.S. NO. 53499

**KEM-TEC**
A GROUP OF COMPANIES

PROFESSIONAL ENGINEERING, SURVEYING & ENVIRONMENTAL SERVICES

| Eastpointe | Detroit | Ann Arbor | Grand Blanc |
|---|---|---|---|
| (800) 295.7222 | (313) 758.0677 | (734) 994.0888 | (888) 694.0001 |
| FAX: (586) 772.4048 | FAX: (586) 772.4048 | FAX: (734) 994.0667 | FAX: (810) 694.9955 |

www.kemtecagroupofcompanies.com

| CERTIFIED TO: MIKE & LINDA LIESS | |
|---|---|
| FIELD SURVEY: JS CK AJ | DATE: NOVEMBER 18, 2020 |
| DRAWN BY: JWH | SHEET: 1 OF 1 |
| SCALE: 1" = 20' | JOB NO.: 20-03084 |

In September 2020, plaintiff filed a quiet-title action against defendants, seeking entry of an order requiring defendants to remove any encroachments on the Ginotti Property identified in the Dekeyser survey, including the encroaching portion of the driveway and landscaping. The next month, defendants brought a counterclaim for quiet title, adverse possession, and acquiescence. Defendants sought title over the concrete parking area, the sprinkler system, and the landscaping installed in 1996. In their request for relief, defendants did not assert entitlement to the larger "Disputed Area" in the Kem-Tec survey; this survey had not yet been completed when the counterclaim was filed.

Following discovery, the parties cross-moved for summary disposition under MCR 2.116(C)(10). Defendants argued in their motion that they obtained title to the "Disputed Area"[3]— which defendants described as a "very small strip of land including a parking area, landscaping and a sprinkler system"—through adverse possession and acquiescence. On the claim of adverse possession, defendants contended that they had maintained the Disputed Area as their own since at least 1996 and their possession had been actual, visible, open, notorious, exclusive, continuous, uninterrupted, and hostile for more than 15 years. Defendants noted that the Ginottis never challenged the location or installation of the original gravel parking area or updated concrete parking area, the original or updated landscaping, or the sprinkler system. Defendants also argued that they obtained title to the Disputed Area by acquiescence. Defendants claimed that Philip and Barbara treated the concrete parking area, landscaping, and sprinkler system as part of the Liess Property, and a white picket fence established the boundary line between the properties. Defendants noted that Michigan courts have long held that a boundary line long acquiesced in should not be disturbed based on new surveys, so plaintiff's 2018 survey should not be used to upend the decades-long status quo. In sum, defendants requested that the trial court enter judgment in their favor and declare that they were the lawful owners of the Disputed Area, including the concrete parking area, landscaping, and sprinkler system.

Plaintiff responded, arguing that there was no genuine issue of material fact that the Disputed Area—which plaintiff defined as a three-to-five-foot portion of concrete parking pad and four-foot section of seasonal landscaping—encroached onto the Ginotti Property. Plaintiff argued further that defendants did not acquire this area by adverse possession because their use of the area was not visible, continuous, exclusive, and hostile for the required 15 years. Plaintiff disputed the claim of acquiescence, arguing that the parties did not agree to treat defendants' claimed boundary line as the property line for at least 15 years. Thus, plaintiff requested that the trial court deny defendants' motion for summary disposition. Plaintiff separately filed his own motion for summary disposition, which largely mirrored the arguments raised in response to defendants'

---

[3] Throughout the summary disposition briefing, the parties sometimes assigned different definitions to "Disputed Area." Defendants described it as the "Disputed Area" identified in the Kem-Tec survey, but plaintiff at times described it as limited to the specific encroachments of the parking area and landscaping. As stated in footnote 1, unless otherwise specified, we use "Disputed Area" to refer to the triangular area identified in the Kem-Tec survey to which the trial court quieted title in defendants' favor.

motion. Plaintiff's motion requested that the trial court quiet title in his favor and dismiss defendants' counterclaim.

At a hearing on the competing motions for summary disposition, the parties argued consistently with their briefing. The trial court concluded that defendants were entitled to summary disposition on their claims of adverse possession and acquiescence. The court subsequently entered an order denying plaintiff's motion for summary disposition and granting defendants' motion for summary disposition. The court entered judgment for defendants and ordered that title to the "Disputed Area" identified in the Kem-Tec survey be quieted in defendants' name. Plaintiff moved for reconsideration, arguing that the trial court quieted title to an arbitrarily selected area beyond the concrete parking area and landscaping that defendants directed their surveyor to include on the Kem-Tec survey. Plaintiff further requested that the court reconsider its summary disposition rulings and quiet title to the concrete parking pad and landscaping in plaintiff's name. The trial court denied plaintiff's motion for reconsideration.

This appeal followed.

## II. STANDARD OF REVIEW

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10) and quieted title in defendants' name. We review de novo a trial court's decision on a motion for summary disposition, as well as a trial court's equitable rulings on actions to quiet title. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). De novo review means that we review the legal issues independently and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). A trial court may only grant summary disposition under MCR 2.116(C)(10) if, considering all evidence submitted by the parties in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Houston*, 335 Mich App at 557. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ADVERSE POSSESSION

Plaintiff first argues that the trial court erred by awarding summary disposition in defendants' favor on their claim of adverse possession.

The statutory basis for a claim of adverse possession arises under MCL 600.5801:

No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

"Generally, an action for the recovery or possession of land must be brought within 15 years after it accrues." *Wengel v Wengel*, 270 Mich App 86, 92; 714 NW2d 371 (2006), citing MCL

-5-

600.5801(4). In *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993), this Court set forth the elements of a successful adverse possession claim:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. [Citation omitted.]

Plaintiff contends that defendants' possession was not hostile because defendants mistakenly believed that the disputed land was their own property.

"The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston*, 335 Mich App at 559 (quotation marks and citations omitted). In *Gorte v Dep't of Transp*, 202 Mich App 161, 170; 507 NW2d 797 (1993), this Court further explained the nuances of the hostility element:

> Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession. By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. As noted by this Court in *DeGroot* [*v Barber*, 198 Mich App 48, 53; 497 NW2d 530 (1993)], it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken.

Put differently, when a party "respected a line that they believed to be the true boundary, but which proved not to be the true boundary," the hostility element is established. *Gorte*, 202 Mich App at 171. "A party seeking to prove hostility need only demonstrate an intent to hold to a visible, preexisting, and recognizable boundary, and if there is evidence that the party did not believe that the boundary was the true line, it would make his or her case stronger because it would reflect true hostility." *Houston*, 335 Mich App at 563.

Defendants established that their possession of the concrete parking area and landscaping area was hostile. Michael testified that he relied on the preexisting gravel parking area, "the plantings and the [red] fence and the edge of the road that were in place when [he] purchased the house to designate the edge of the property." He explained that these markers "represented what [he] believe[d] to be the edge of [his] property." Linda similarly testified that defendants relied on plantings from the previous property owners to determine the property lines. Defendants also

-6-

relied on the mortgage surveys to bolster their belief that the preexisting landmarks were contained within the Liess Property. The record shows that defendants, by relying on the plantings, parking area, and red fence left by the previous owners, "respected a line that they believed to be the true boundary, but which proved not to be the true boundary." *Gorte*, 202 Mich App at 171. While defendants were ultimately mistaken in their assessment of the boundary lines, "[s]imply being mistaken with regard to the true boundary line . . . does not defeat a claim of adverse possession." *Id*. at 170. Defendants showed that their encroachments onto the Ginotti Property were "inconsistent with the right of the owner" and therefore sufficiently established the element of hostility. See *Houston*, 335 Mich App at 559.

Plaintiff also argues that defendants' possession was not open, visible, and continuous. Plaintiff does not dispute that the concrete parking area installed by defendants was open, visible, and continuous. Defendants upgraded the parking area to concrete in 1996, and it has continuously and visibly existed for more than 15 years since. Instead, plaintiff focuses on the landscaping and sprinkler system. Plaintiff argues that the landscaping was not permanently visible because it was seasonal and did not extend the length of the purported boundary line. We note that it is unclear to what extent *permanent* visibility is a required element of adverse possession. That is particularly so in the context of landscaping and other plantings that mark boundary lines, as their level of visibility will naturally change with the weather. In any event, defendants presented evidence that they installed landscaping alongside the concrete parking area in 1996 to beautify their home. Jackson, the Kem-Tec surveyor, noted that his crew located the exterior points of the landscaping area in 2020, 24 years later. And the boundaries of the landscaping display were clearly identified on the certified surveys in 2018 and 2020. While Jackson testified that there was no vegetation in the landscaping area when he visited the Liess Property, there was a line between the mulch and the grass that crossed over the property line. In our view, while the extent of visibility of the landscaping may have varied throughout the year, there is no genuine issue of material fact that the boundaries of the landscaping area were visible for at least 15 years. Plaintiff has presented no evidence creating a factual dispute on this point. In particular, plaintiff's assertion in briefing that the landscaping was seasonal and not permanent is not evidence and does not suffice to establish a genuine issue of material fact. Thus, defendants adversely possessed the landscaping area identified in the Kem-Tec survey by 2011.

As for the sprinkler system, we agree that defendants have not established a claim of adverse possession. Crucially, nowhere in the record is there any clear indication where the underground sprinklers are even located. The surveys do not identify any sprinkler heads or irrigation system. Defendants offered a handwritten diagram, purportedly drawn at the time of installation in 1996, labeling various sprinkler heads throughout the Liess Property. But Michael conceded this diagram had no markers showing the actual property lines. And Michael testified vaguely that the irrigation "runs along the edge of the concrete" and "all the way down the side of the house." Without clear and cogent evidence that the sprinkler heads even encroach on the Ginotti Property, defendants are not entitled to judgment as a matter of law on their claim of adverse possession over the property on which the sprinkler system sits.

The trial court, however, found that defendants adversely possessed the entire Disputed Area identified in the Kem-Tec survey. We reject that conclusion for purposes of entitlement to summary disposition under MCR 2.116(C)(10). First, as noted earlier, defendants' counterclaim did not even seek possession of the Disputed Area as relief, and thus on that basis alone, we

question whether the trial court should have granted summary disposition in defendants' favor over this larger strip of land. But even assuming that defect is not fatal, the record is absent of evidence establishing the western boundary of the Disputed Area. Consider this exchange during Jackson's deposition:

> *Q.* Okay. So there was no marking at the edge of the property boundary that would denote that disputed area?
>
> *A.* No, we did not set anything on the disputed area.
>
> *Q.* You didn't set anything?
>
> *A.* That is correct.
>
> *Q.* Okay. So that disputed area basically was a dimension that was given to you, but you don't have any independent opinion as to what that's based upon?
>
> *A.* Correct.

Michael was also asked about the bounds of the Disputed Area at his deposition:

> *Q.* . . . [Jackson's] testimony was that you told him to place that shaded area there, correct?
>
> *A.* Correct.
>
> *Q.* Okay. He did not place that there as part of the certified survey describing the Lot 41?
>
> *A.* He prepared the document. I gave the direction based on the 28 years of maintenance and continued improvement on the property without objection from Ginotti family, Phillip Ginotti in particular.
>
> *Q.* Now, you had this wedge. You told him to draw this wedge that goes all the way down to the property line at the water, correct?
>
> *A.* Yes.
>
> *Q.* Okay. And you had him draw that wedge out. What indicators were there that would put anybody on notice that you were claiming that property?
>
> *A.* Taking the fence down from the original house, putting in sod, landscaping, sprinkler systems, new concrete, all in 28 years without objections from the Ginottis.

As best we can disern, the boundaries of the Disputed Area drawn on the Kem-Tec survey were entirely determined by defendants and added at their direction to the survey. Defendants did not identify markers or monuments along the border of the Disputed Area that reveal how its edges were determined. Neither the concrete nor the landscaping installation extends to the western

-8-

boundary of the Disputed Area and together these markers are merely a small section of the Disputed Area as identified on the Kem-Tec survey. Even accepting defendants' assertion that the parties treated the white picket fence as the boundary line between the properties, defendants only had a small section of this fence up on the northern end of the boundary with the Ginotti Property. Thus, the white picket fence could not possibly establish that the parties treated the entire western boundary of the Disputed Area as the property line between the two lots. Nor was the white picket fence even in place for the 15-year statutory period. In sum, defendants have fallen far short of their burden to present clear and cogent evidence that they adversely possessed the *entire* Disputed Area, beyond the concrete parking area and landscaping installation. Because defendants failed to show that their possession over this area was "actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years," *Kipka*, 198 Mich App at 439, the trial court erred by concluding as a matter of law that defendants adversely possessed the Disputed Area.

## IV. ACQUIESCENCE

Plaintiff next argues that the trial court erred by granting summary disposition in defendants' favor on the theory of acquiescence for the statutory period.

"Under Michigan law, parties may acquiesce to a new property boundary line" that is distinct from the titled property line. *Houston*, 335 Mich App at 567. "The law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is." *Kipka*, 198 Mich App at 438. Again, the statute of limitations for an action for the recovery or possession of land is generally 15 years after the cause of action first accrues. MCL 600.5801(4). Acquiescence for the statutory period, one of the three theories of acquiescence,[4] is therefore met "when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line" for the 15-year statutory period. *Houston*, 335 Mich App at 567-568 (quotation marks and citation omitted). "Unlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission." *Id*. at 568.

Genuine issues of material fact exist whether the parties treated the boundary of the Disputed Area as the property line for 15 years. As discussed, the factual basis for the boundary lines of the Disputed Area is unclear and poorly-defined. While defendants, through their deposition testimony and declarations, presented evidence that they exclusively maintained the Disputed Area and treated its boundary as their property line for more than 25 years, plaintiff presented evidence, primarily through the affidavit of Jim Kirn, contesting defendants' assertions. Kirn's family lived on Lot 39, west of the Ginotti Property, beginning in 1956. Kirn attested that he, along with his brother and father, maintained the Ginotti Property each week for nearly 60 years. Kirn stated that Barbara occasionally called Michael to "tell him to stop crossing the property line and mowing a portion of the Ginotti Property." Barbara told Kirn to let her know

---

[4] The three theories of acquiescence are "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Houston*, 335 Mich App at 567 (quotation marks and citation omitted).

any time that Michael put anything on the Ginotti Property, and Kirn did so on at least one occasion. Thus, Kirn's affidavit contains evidence that the Ginottis did not acquiesce to defendants' alleged encroachment across the entire Disputed Area, and in fact, objected to defendants crossing over the property line. At the very least, Kirn's affidavit creates a genuine issue of material fact regarding whether the parties treated the western boundary of the Disputed Area as the property line between the Ginotti and Liess Properties. Accordingly, the trial court erred by concluding that defendants had established a claim of acquiescence.

## V. PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION

Relatedly, plaintiff argues that the trial court erred by denying his motion for summary disposition, which sought an order quieting title in his name. Because we have concluded that defendants adversely possessed the encroaching portions of the concrete parking area and landscaping installation, the trial court did not err by refusing to quiet title in plaintiff's name over these encroachments. To the extent that plaintiff seeks an order quieting title to the rest of the Disputed Area identified in the Kem-Tec survey, genuine issues of fact remain regarding whether defendants gained title to that area by adverse possession or acquiescence. Thus, for reasons discussed throughout, triable factual issues preclude us from granting judgment as a matter of law to plaintiff over the rest of the Disputed Area. See *Houston*, 335 Mich App at 557. The trial court did not err by denying plaintiff's motion for summary disposition.

## VI. CONCLUSION

We affirm the trial court's summary disposition order with respect to the quieting of title for defendants in the concrete parking pad and landscaping area identified in the Kem-Tec survey. We reverse the trial court's order quieting title for defendants in the rest of the Disputed Area in the Kem-Tec survey, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett

-10-