*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ROBERT LEE BERRY, EUGENE BERRY, and
MARY BERRY,

UNPUBLISHED
May 18, 2023

Plaintiffs-Appellants,

v

No. 360800
Wayne Circuit Court
LC No. 20-014056-NO

CITY OF DETROIT, MARCELLUS BALL, and
KEITH MARSHALL,

Defendants-Appellees.

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7) (governmental immunity) based on its conclusion that defendants were protected by the Government Tort Liability Act (GTLA), MCL 691.1401 *et seq*. We reverse and remand.

## I.  BACKGROUND

This case arises from an armed assault that was perpetrated during the early morning hours of January 1, 2020.  Mariah Thomas was out with her friend, Jamarah Matthews, when she got into an argument with an unidentified man.  The argument became physical, and while Thomas was attempting to escape in her car, the man beat her through the passenger side window with a handgun.  Thomas escaped from the man, but when she was returning to pick up Matthews, the man shot Thomas in her left leg.  Thomas described the man to police as "a younger black male," and Matthews described the assailant as a "brown skinned" man who was approximately 5'6" tall, with a beard and dark clothing.  Another eyewitness described the assailant as a short black man with a light complexion.

Defendant Marshall was employed as a civilian crime analyst with the Detroit Police Department (DPD).  On January 2, 2020, the police received a tip about the assault, and the tipster provided the following description of the assailant: "A guy whose street name is Rabbit is involved. He's in his 40s.  Kind of short and heavyset (not real big kinda chubby) and his skin is a light

-1-

skinned complexion. He told someone that he 'did that shit.'" The tip was given to Marshall who, through the use of multiple databases, learned that Robert Lee Berry apparently had an alias of "Robbit Lee Berry."[1] Defendant Ball, who was employed by DPD as a Sergeant, presented a photo lineup with pictures of Robert Lee Berry and five other people. Thomas identified Robert Lee Berry as the assailant, but the other two eyewitnesses did not. Based on Thomas's identification, Ball obtained warrants for Robert Lee Berry's arrest and a search of his home.

Robert Lee Berry, the lead plaintiff in this case, suffers from a myriad of health-related ailments and was hospitalized at the time of the assault. He returned home on January 25, 2022. The other plaintiffs are Robert's parents, Eugene Berry and Mary Berry. Because of Robert's health problems, he was living with his parents and had been since 2019. On February 20, 2022, the police broke into plaintiffs' home pursuant to a no-knock warrant, handcuffed Eugene and Mary together, arrested Robert, and searched the home. The plaintiffs attempted to explain that Robert had been hospitalized and offered to provide documentation to that effect. While the officers used the hospital paperwork to verify the plaintiff's identity, it is unexplained why they did not take note that it provided plaintiff an alibi.

Robert was incarcerated for three days until his siblings were able to post his bail. At the preliminary examination, Thomas testified that she was uncertain if Robert Lee Berry was the assailant. Surveillance footage of the assault was played, and it quickly became clear to the district court that Robert, who was 6'1" tall, could not have been the assailant. Accordingly, the charges were dismissed.

On October 26, 2020, plaintiffs filed a complaint in which they asserted numerous federal and state law causes of action. Plaintiffs then attempted to remove the case to federal court, but the Eastern District of Michigan declined to exercise its supplemental jurisdiction to hear the state law claims. Accordingly, the case was remanded to the circuit court to proceed with plaintiffs' claims for malicious prosecution, false arrest, false imprisonment, and gross negligence. Defendants filed a motion seeking summary disposition based in part on their assertion that they were protected by governmental immunity. Plaintiffs conceded as much with respect to the city of Detroit, but proceeded against Ball and Marshall. However, summary disposition was ultimately granted in favor of all three defendants.

## II. GOVERNMENTAL IMMUNITY

Plaintiffs argue that the trial court improperly shifted the burden of proof to plaintiffs with respect to the affirmative defense of governmental immunity. We agree.

A trial court's decision to grant summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The applicability of governmental immunity as well as the interpretation and application of statutes are likewise reviewed de novo. *McLean v McElhaney*, 289 Mich App 592, 596; 798 NW2d 29 (2010).

---

[1] Nothing in the record confirms that Robert Lee Berry actually went by the name "Robbit."

This case involves interpretation and application of the GTLA, Section 7 of which provides, in relevant part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

However, the GTLA "does not alter the law of intentional torts as it existed before July 7, 1986." MCL 691.1407(3).

Our Supreme Court provided guidance with the interpretation of Subsections 2 and 3 when it decided *Odom v Wayne Co*, 482 Mich 459, 469-472; 760 NW2d 217 (2008). The Court clarified that Subsection 2 applies only to negligence, not intentional torts. *Id*. at 470. Subsection 3, however, "indicates the Legislature's intent to confer immunity on governmental employees for intentional torts to the same extent allowed under the common law as it existed before July 7, 1986." *Id*. (emphasis omitted). The Court clarified that, with respect to intentional torts, the applicability of governmental immunity is governed by the Supreme Court's decision in *Ross v Consumers Power Co*, 420 Mich 567; 363 NW2d 641 (1984). *Id*. at 472. Finally, with respect to the burden of proof, the Supreme Court clarified that "[i]n the GTLA, the Legislature has not abrogated the common law by shifting the burden of proof with regard to governmental immunity for individuals. Accordingly, the burden continues to fall on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense." *Id*. at 479.

## A. INTENTIONAL TORTS

The trial court erred by concluding that defendants were entitled to immunity with respect to the intentional torts because it erroneously applied the GTLA, and because it erroneously shifted the burden of proof to plaintiffs.

Plaintiffs raised the intentional torts of false imprisonment, false arrest, and malicious prosecution. In *Odom*, the Supreme Court outlined the procedure for determining the applicability of governmental immunity in the context of intentional torts:

If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test by showing the following:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial. [*Id*. at 480.]

In this case, it is undisputed that defendants met requirements (a) and (c); the only dispute is whether defendants established that they acted in good faith.

Because the burden of establishing immunity falls on the party asserting it, "the proponent of individual immunity must establish that he acted without malice." *Id*. at 475. The trial court granted summary disposition through a written order, saying only: "Both defendants are entitled to immunity under the GTLA as the Plaintiff has not shown that either acted in bad faith or malice." The lack of any meaningful analysis notwithstanding, the trial court made two glaring errors with respect to the intentional torts. First, as noted above, the party asserting the defense has the burden of establishing it. In other words, defendants must establish that they acted in good faith or without malice; instead, the trial court placed the burden on plaintiffs to establish that Marshall and Ball acted in bad faith or with malice. Second, as the Supreme Court made abundantly clear in *Odom*, the GTLA applies only to negligent torts, not intentional torts. *Odom*, 482 Mich at 470. The trial court's decision that defendants were immune from the *intentional* torts under the GTLA was a legal error warranting reversal.

Therefore, we reverse the trial court's decision to grant summary disposition on the basis of governmental immunity as it pertains to plaintiffs' claims of false arrest, false imprisonment, and malicious prosecution.

## B. GROSS NEGLIGENCE

The trial court erred by concluding that defendants were entitled to immunity with respect to their claim of gross negligence because it erroneously applied the standard for governmental immunity that applies to intentional torts and because it erroneously shifted the burden of proof to plaintiffs.

Applying the GTLA, our Supreme Court outlined the procedure for assessing whether governmental immunity applies in tort cases alleging negligence:

If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

-4-

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage. [*Odom*, 482 Mich at 479-480.]

To reiterate, the sole basis for the court's decision to grant summary disposition was that defendants were "entitled to immunity under the GTLA as the Plaintiff has not shown that either acted in bad faith or malice." In addition to the issues discussed above concerning the burden of proof, the trial court erred by applying the standard for intentional torts for plaintiffs' negligence claim. With respect to the GTLA, neither party needs to make a showing with respect to good faith or malice; such a showing applies to intentional torts under the common law, not negligent torts under the GTLA. In this case, only requirement (c) is in dispute, but the trial court did not reach any conclusions regarding whether the defendants' conduct amounted to gross negligence.

The brevity of the court's conclusions is particularly harmful with respect to the gross negligence claim because there were numerous factors that arguably could amount to gross negligence. For example, Robert Lee Berry was arrested, held for three days, and subjected to a preliminary examination despite having an easily verifiable alibi; Robert Lee Berry is approximately 6'1" tall, and the assailant was described as approximately 5'6"; Robert Lee Berry was considered a suspect based on information from a tipster that the assailant went by the nickname "Rabbit" because a database indicated that he used the alias "Robbit;" and the photographic lineup from which Robert Lee Berry was identified contained individuals ranging in age from 49 to 61 years old despite the fact that the assailant was described as being a young man. We have drawn no conclusions regarding whether these investigative failings amounted to gross negligence; rather, we believe it is important for the trial court to consider these and other surrounding circumstances could lead to a finding of gross negligence. A conclusory statement that there was no gross negligence will not suffice. Moreover, for the purposes of immunity rather than liability, the burden is on defendants to establish that their conduct *did not* amount to gross negligence. If defendants cannot establish that their conduct was not grossly negligent, then they are not entitled to immunity under the GTLA, and the burden at trial then shifts to plaintiffs to establish that their conduct *did* amount to gross negligence.[2]

Therefore, we reverse the trial court's decision to grant summary disposition in favor of defendants with respect to plaintiffs' claim of gross negligence.

III. CONCLUSION

---

[2] We decline to address the parties' arguments regarding whether there was probable cause to believe that Robert Lee Berry was the assailant and the impact this has on the gross negligence claim because the trial court dismissed all of the claims based on its conclusion that defendants were entitled to governmental immunity.

The trial court's order granting summary disposition in favor of defendants is reversed. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado