*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEISHA JORDAN,

Plaintiff-Appellee,

UNPUBLISHED
July 27, 2023

v

No. 361116
Macomb Circuit Court
LC No. 2020-004440-NF

ALLSTATE INSURANCE COMPANY,

Defendant-Appellant.

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant, Allstate Insurance Company, appeals by leave granted[1] the trial court's order denying its motion for summary disposition. This case arises from injuries plaintiff, Keisha Jordan, sustained in a December 2019 car accident and her efforts to obtain insurance benefits from defendant. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) on January 21, 2022, arguing that plaintiff's grandparents were the named insureds and that plaintiff was not domiciled with them at the time of the accident; therefore, she was not entitled to benefits from the policy. The trial court denied this motion, and we affirm.

## I. BACKGROUND

At the outset, it is important to note that, while this case arises from a car accident, the circumstances surrounding the accident are not relevant to this appeal. The *only* issue before this Court is whether a rational trier of fact could find that defendant was domiciled with her grandparents at the time the accident occurred. Therefore, any allegations or evidence regarding the accident itself have been omitted.

---

[1] *Jordan v Allstate Ins Co*, unpublished order of the Court of Appeals, entered October 27, 2022 (Docket No. 361116).

Litigation in this matter began on December 11, 2020 when plaintiff filed her complaint against defendant. In this complaint, plaintiff asserted a claim for no-fault benefits arising from a car accident she was in on December 15, 2019. Plaintiff alleged that, because of the accident, she incurred various expenses that defendant was obligated to pay pursuant to a "provision of an insurance policy Defendant issued by Defendant [sic] to" plaintiff. Plaintiff acknowledged that defendant had made some payments, but she alleged that she was entitled to additional costs and that defendant "failed, neglected, and refused to pay those additional costs which continue to accrue." Plaintiff also alleged a claim for uninsured/underinsured motorist benefits, but this claim was subsequently dismissed by stipulation of the parties.

## A. DEPOSITION OF KEISHA JORDAN

Plaintiff was deposed on August 11, 2021. Plaintiff testified that she was living at the Brookwood Apartments.

> *Q*. How long have you lived there?
>
> *A*. A year and-a-half.
>
> *Q*. Do you recall when you moved in?
>
> *A*. September 2019?

Prior to moving to this apartment, plaintiff lived with her grandparents, Clifford and Joyce Jordan, and two of her nephews.

Plaintiff was asked to clarify where she was living at the time of the car accident that led to the litigation:

> *Q*. So on the date of the accident, were you living in—at [the apartment]?
>
> *A*. No.
>
> *Q*. You were not. So you said you moved in in September of 2019 and the date of the accident I have is December of 2019. Could you kind of describe what was going on there?
>
> *A*. I don't remember exactly—I know for a fact I was living with my grandparents at the address. I probably had the year wrong, but I've only been at my apartment for a year.
>
> *Q*. Okay. So let's go back just a little bit then. So you said you moved in the apartment in September of 2019. Are you saying that you did have the apartment at the date of accident?
>
> *A*. It was 2020, I apologize, that I moved in because I've only been there for a year and-a-half and it's 2021.

-2-

*Q*. So do you know which month in 2020 you would have moved in to the Brookwood apartment?

*A*. September.

*Q*. September of 2020?

*A*. Yes.

*Q*. Okay. And you said you've been there a year and-a-half?

*A*. Yes.

*Q*. Okay. Because it hasn't been—my calculations—I just want to understand this. My calculations have September—it's not September of 2021 yet so that's not quite one year. So I'm just trying to understand if the year and-a-half is correct or the September of 2020 is correct.

*A*. Time is moving before my eyes.

*Q*. I understand.

*A*. I don't remember. I know I was not living at Brookwood, so.

\* \* \*

*Q*. Okay. Now, and I'll ask you in this way. Did you have the Brookwood apartment in any capacity in December of 2019?

*A*. No. I didn't move out from [my grandparents'] address until a year after the accident.

*Q*. Okay. So then would it be fair to say that you've been at the Brookwood apartment for—for little [sic] under a year then?

*A*. Yes.

Plaintiff was then asked additional follow up questions regarding which addresses she uses for mail:

*Q*. When you moved out of your apartment [sic], did you—is that where you started getting all of your mail and did you change all of your credit cards and your phone bill over to the Brookwood address?

*A*. No. I use [my grandparents' house] as my mailing address.

*Q*. Do you still use it as your mailing address?

*A.* Yes. For some things because I don't like my grandparents in my business. They will open my mail.

*Q.* So how do you distinguish or how do you get some mail at one play and some mail at another place? Is it, like, do you have to go individually through a company or something?

*A.* Because being that I know my grandparents aren't ever moving from the [house], I have certain things going there. Things that I want to come to my apartment, I have going to my apartment, so my debit card, ID, main, important things, like, from the Secretary of State, that's going to [my grandparents' house].

*Q.* Okay. What type of mail do you get at the Brookwood address?

*A.* I have my current car insurance. I actually just started a new child support case with a different person. I have that mail coming to Brookwood.

*Q.* Okay.

*A.* Obviously DTE.

*Q.* Like, your utilities?

*A.* Yes.

*Q.* Okay.

*A.* Xfinity.

Plaintiff was then asked about what, if any, personal belongings she was keeping at her grandparents' home:

*Q.* So do you keep all of your belongings and your possessions at your grandparents' house or do you keep them at the Brookwood apartment?

*A.* Brookwood.

*Q.* Okay.

*A.* Certain things, like, my birth certificate and copy of my ID and stuff, important stuff like that is at [my grandparents' house].

Plaintiff testified that her grandparents' address was the address listed on her driver's license.

In light of plaintiff's enduring attachments to her grandparents' house, she was asked to explain her purposes for getting the apartment:

*Q.* So could you tell me a little bit about, you know, were you planning on—when you were getting this apartment if you were planning to move out

permanently or were you planning on coming back to your grandparents' at some point?

*A.* No, not unless I had to for emergency reasons, for whatever reason I couldn't afford my rent and got put out, but, no, I permanently have plans to move out. I just never changed my address because it's—I have too much other—that address is my address. So even if I did ever move, I would probably move back there, if I had to.

*Q.* So what you're saying is that you would—you would only move back to [your grandparents' house] if for some reason you weren't able to stay at your apartment?

*A.* Yeah, because if I couldn't afford my rent I would move somewhere else.

*Q.* No, I understand. So is it fair to say that you got this new apartment to move out and kind of get out on your own and get away from your grandparents type of thing?

*A.* Yeah.

*Q.* Okay.

*A.* Personal space. I have my own child, I was nursing. Just wanted my own space.

## B. DEPOSITION OF JOYCE JORDAN

Plaintiff's grandmother, Joyce Jordan, was deposed on November 9, 2021. Joyce testified that she had been plaintiff's guardian since plaintiff was five years old and that she had adopted plaintiff. Joyce testified that she and her husband, Clifford, had owned their home in Ypsilanti for approximately 50 years. At the time of the deposition, Joyce and Clifford had two teenaged grandsons who were also living with them. Joyce was asked about when plaintiff stopped living with her and Clifford:

*Q.* [D]o you recall when [plaintiff] moved out of the house?

*A.* You know, I really don't know because like back and forth she lived with us.

*Q.* What do you mean by that?

*A.* Well, she lived with us and then she moved and then she came back. So I don't know the exact—I don't know the date.

\* \* \*

-5-

*Q.* So do you know approximately the month and the year that [plaintiff] made the decision to move out of [your house]?

*A.* I cannot, no. It—no. I'll just have to say no.

Plaintiff initially told Joyce that she was interested in moving out to be on her own prior to the 2019 car accident. Joyce testified that she and Clifford continued receiving mail addressed to plaintiff after plaintiff moved out of their house. While Joyce was sure that plaintiff did not get utility bills sent to her and Clifford's house, she did not know what type of items plaintiff did have sent there. Joyce testified that, rather than opening plaintiff's mail, she would put the mail in a folder that plaintiff would come and pick up.

Joyce was asked about what plaintiff took with her when she moved out of the house and into the apartment:

*Q.* When [plaintiff] left [your house], what did she take with her from the house that was her possessions? [sic]

*A.* From what I can remember her clothes because she just had a room here, you know. It wasn't like she had bought furniture to do here.

\* \* \*

*Q.* Now, was there anything that you can recall that [plaintiff] left behind at [your house] when she moved out?

*A.* That she left behind? No, I think she pretty much took everything that— you know, I guess starting from scratch. As far as taking things from here, no, I can't think of anything.

*Q.* Did she leave like her birth certificate or anything, those types of things, like her personal items?

*A.* I have her birth certificate, yes.

*Q.* Okay. So like the birth certificate and Social Security and stuff, she kept all of that at [your house]?

*A.* Right.

*Q.* And why was that?

*A.* Oh, just because she was in an apartment and safekeeping. I keep them locked up. They have copies or I have copies.

Joyce testified that plaintiff still had keys to her house and that she was free to come and go as she pleased. However, Joyce and Clifford did not continue to maintain a bedroom for her.

-6-

Joyce testified that at the time of the accident, in December of 2019, plaintiff was not living at her house; at that time, only Joyce, Clifford, and two grandsons lived there. Joyce was not sure where plaintiff lived in December 2019, but she speculated that plaintiff might have been living with her mother.

> *Q.* You're clear that [plaintiff] was not living with you in December of 2019, correct?
>
> *A.* Yeah.

Plaintiff was still welcome at Joyce's and Clifford's house after she moved out, but it was more common for plaintiff to stay with her mother, who lived across the street from Joyce and Clifford. Joyce had difficulty remembering when things happened in relation to the accident because she did not know about the accident until a later time after it occurred. At the time of the deposition, Joyce still did not know any details of the accident.

### C. ALLSTATE'S MOTION FOR SUMMARY DISPOSITION

On January 21, 2022, defendant filed a motion seeking summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and (c)(10) (no genuine issue of material fact). Defendant asserted the following grounds for its motion:

> 1. This claim for first-party personal injury protection ("PIP") benefits arises out of a motor vehicle accident that occurred on December 15, 2019.
>
> 2. On the date of the loss, Plaintiff claims she sustained injuries while the driver of a 2011 Ford Fiesta insured by Allstate Insurance Company . . . .
>
> 3. The policy was issued to two (2) named insureds, Clifford Jordan and Joyce Jordan. . . .
>
> 4. Plaintiff is not listed as a named insured or as an additional driver on the policy.
>
> 5. On the date of the loss, Plaintiff was not the spouse or resident relative of Allstate's named insureds.
>
> 6. Plaintiff is not entitled to no-fault benefits under the Policy because she was not a named insured, nor was she the spouse or resident relative of a named insured on the date of loss.

In addition to the depositions detailed above, the motion was supported by a copy of the lease agreement between Brookwood Apartments and plaintiff, and the agreement indicated that it was entered into on September 1, 2019. The term of the lease was September 1, 2019 until August 31, 2020.

On February 28, 2022, a hearing was conducted to consider defendant's motion for summary disposition. Defendant reiterated its position that plaintiff did not live with her

grandparents at the time of the accident, emphasizing the fact that she "signed a one-year lease on September 1st, 2019, for Brookwood Apartments." The court noted that plaintiff testified in her deposition that she was living with her grandparents at the time of the accident, and defendant responded that plaintiff initially testified to the contrary but purported to correct herself when it was pointed out that she had testified that she moved out before the accident. The trial court expressed concern over what it perceived as a request to weigh the veracity of plaintiff's testimony, which would generally be inappropriate at the summary disposition phase.

The court denied defendant's motion, and the following was the entirety of its discussion on this decision: "Well, Counsel, I'm going to tell you right now I think it will be the subject for a motion for a directed verdict at the close of the Plaintiff's proofs . . . . But at this point I'm going to deny the motion." The trial court subsequently entered an order memorializing its decision, stating that summary disposition was denied "for the reasons stated on the record."

This appeal followed.

## II. DISCUSSION

Defendant argues that the trial court erred by denying its motion for summary disposition because no rational trier of fact could find that plaintiff was domiciled with her grandparents at the time of the accident. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition should be granted under MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). However, "[p]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Fields v Suburban Mobility Auth For Regional Transp*, 311 Mich App 231, 237-238; 874 NW2d 715 (2015) (quotation marks and citation omitted).

## B. DISCUSSION

The trial court properly concluded that summary disposition was inappropriate because a rational trier of fact could find that plaintiff did not move out of her grandparents' house until after the accident.

The most important evidence supporting plaintiff's position that she did not move until after the accident was her testimony to that effect. Plaintiff repeatedly testified that she was certain she still lived with her grandparents at the time of the accident. She was insistent in her position

that a significant amount of time elapsed between the accident and the move.  It is true that plaintiff initially testified that she moved in September 2019, approximately three months before the accident, and while she did express significant uncertainty regarding the exact date of the move, she did not waver when asked if she lived at her apartment yet at the time of the accident.  A rational jury could find that plaintiff had difficulty remembering exact dates, but her mind did not have difficulty remembering the timing of significant events in her life in relation to one another.

Perhaps the most compelling evidence supporting defendant's position that plaintiff moved before the accident was a lease agreement between her and the Brookwood apartments that indicated a term of September 1, 2019 until August 31, 2020.  However, plaintiff was not asked any questions about this lease during her deposition, and there was no testimony from any employees of the Brookwood apartments.  Based on the record as it currently exists, it's possible that plaintiff did not move until after the lease began, and it's also possible the lease was modified or revoked.  While this lease could very well be persuasive to a jury, there are too many open questions for it to be deemed definitive at this stage in the litigation.  The other evidence supporting defendant's assertion that plaintiff moved before the accident was the testimony of plaintiff's grandmother, Joyce Jordan.  It is true that Joyce testified that plaintiff had moved out before December 2019.  However, it is also true that Joyce knew very little about the accident and could not say with any certainty when plaintiff left or where she went after she left.  The lease and the testimony of Joyce Jordan are both relevant for credibility and weight, but those are not matters to be decided at summary disposition.  See *Pioneer*, 301 Mich App at 377.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado