*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FANNITA KING and CLAUDE MCELRATH,

        Plaintiffs-Appellees,

v

GREENFIELD JOY, INC., doing business as U.S.
QUALITY FOOD SUPER MARKET,

        Defendant-Appellant,

and

CEDRIC LYNN WINDOM and JOHN DOE
COMPANY,

        Defendants.

UNPUBLISHED
April 08, 2025
3:01 PM

No. 370599
Wayne Circuit Court
LC No. 20-000293-NO

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

A security guard who was working for defendant, Greenfield Joy, Inc.,[1] doing business as U.S. Quality Food Super Market, shot a customer and her boyfriend just outside defendant's store. Both victims of the shooting sued defendant for the actions of its security guard, and the trial court denied defendant's motion for summary disposition under MCR 2.116(C)(10) despite defendant's contention that the security guard was not acting within the scope of his employment when he shot plaintiffs and that the shooting was not foreseeable. We conclude that the security guard was not acting within the scope of his employment when he shot plaintiffs, so we reverse the trial court's denial of summary disposition of plaintiffs' respondeat superior claim. But we determine that the trial court did not err when it denied summary disposition of plaintiffs' claim of negligent hiring,

---

[1] Greenfield Joy is the only defendant that is a party to this appeal, so all references to defendant in this opinion refer to Greenfield Joy.

training, management, or supervision, so we affirm that part of the trial court's order and remand the case for any further proceedings necessary on that claim.

## I. FACTUAL BACKGROUND

On October 6, 2019, what began as a trip to defendant's grocery store by plaintiff, Fannita King, ended with King and her boyfriend, plaintiff Claude McElrath, both being shot by the store's security guard. The interaction started when the security guard confronted King because she had 12 items in the "10 items or less" check-out line. An argument ensued between the security guard and King, but King eventually completed her transaction and left the store.

King believed the security guard had been disrespectful during the argument, so when she left the store, she called McElrath and told him what had happened. McElrath arrived at the store a few minutes later, and then he and King went back into the store to confront the security guard. McElrath found the security guard in the store and confronted him about the way that he had treated King. The security guard later claimed that, during this confrontation, McElrath told the security guard that he was going to kill him. At some point, either McElrath or the security guard suggested that they take the dispute outside, although the two men offered conflicting accounts of who made that suggestion. The security guard, McElrath, and King all walked out of the store into the parking lot, where the confrontation resumed. The security guard said that King and McElrath continued to threaten him. And at his subsequent criminal trial, the security guard testified that he feared for his life and acted in self-defense.

A security camera outside the store captured the shooting and the minutes leading up to it. Just before the shooting, the security guard was attempting to go towards King and McElrath, but he was being held back by three people—Mawloud Pattah,[2] an owner of the store, Fadi Ywnan, a store employee, and an unidentified woman. At one point, the security guard is seen being escorted by the three individuals back towards the entrance of the store while still yelling at McElrath, who was seated on a motorcycle and had begun to leave. While McElrath was seated on his motorcycle, the security guard pushed through the grasp of the three people holding him back, walked to within a few feet of McElrath, and fired his gun. The shot hit McElrath in the chest, causing him to roll off the motorcycle and sit on the ground. King, who had walked away, ran back toward the security guard, who turned around and fired his gun at King, striking King in the neck and knocking her to the ground. The security guard later testified that he believed King had a gun and she was going to shoot him. The video does appear to show that King pulled out a gun before the security guard shot her, but King never fired her gun. With King and McElrath on the ground, the security guard walked around to McElrath and shot him again, this time in the leg.

The security guard ultimately was convicted of two counts of assault with intent to commit murder and sentenced to serve 18 to 30 years in prison. Plaintiffs filed a complaint that included two claims against defendant: respondeat superior and negligent hiring, training, management, or supervision. Defendant moved for summary disposition under MCR 2.116(C)(10), asserting that

---

[2] Mawloud Pattah will be identified by his first name because he shares a surname with another individual involved in this case.

(1) defendant was not vicariously liable for the shooting because the security guard was not acting within the scope of his employment when the shooting occurred, and (2) defendant was not directly liable under a theory of negligent hiring, training, management, or supervision because the security guard's actions were not foreseeable. The trial court heard oral argument and denied the motion, ruling that genuine issues of material fact existed as to whether the security guard was acting within the scope of his employment with defendant when he shot plaintiffs and whether defendant did not properly supervise, train, or manage its security guard. The parties subsequently settled plaintiffs' claims, but defendant reserved the right to appeal the trial court's denial of summary disposition.[3] This appeal followed.

## II. LEGAL ANALYSIS

Defendant asserts that the trial court erred when it denied summary disposition to defendant on plaintiffs' two claims. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is warranted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. Similarly, we must draw "all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

Plaintiffs' complaint seeks to hold defendant liable for the actions of its security guard on the theories of respondeat superior and negligent hiring, training, management, or supervision. We must address each of these theories separately, and we will do so in turn.

## A. RESPONDEAT SUPERIOR

Defendant contends that the security guard's actions in shooting plaintiffs were not within the scope of his employment, so defendant cannot be held vicariously liable for the shooting under the doctrine of respondeat superior. Defendant insists that the trial court therefore erred by denying its motion for summary disposition of this claim. We agree.

"Under the doctrine of respondeat superior, the general rule is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business." *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006). Our Supreme Court "has defined 'within the scope of employment' to mean engaged in the service of his master, or while about his master's business." *Hamed v Wayne Co*, 490 Mich 1, 11; 803 NW2d 237 (2011) (quotation marks and citation omitted). "Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within

---

[3] Settling a civil case but reserving the right to appeal an adverse ruling is uncommon, but neither side has challenged our ability to entertain this appeal, so we will resolve the issues on the merits.

the scope of employment." *Id*. "Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*. "While the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact, the issue may be decided as a matter of law where it is clear that the employee was acting to accomplish some purpose of his own." *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 572; 918 NW2d 545 (2018) (quotation marks and citation omitted).

Our Supreme Court has declined to adopt the "aided by agency relationship" exception to employer nonliability. *Zsigo*, 475 Mich at 221-227. Under that exception, an employer could still be liable for a tort committed by an employee that was beyond the scope of employment if "the employee was aided in harming the plaintiff by the existence of the agency relationship between the employee and the employer." *Id*. at 222. Our Supreme Court rejected that exception because it "would potentially be subjecting employers to strict liability." *Id*. at 227.

Here, the trial court decided that reasonable minds could differ as to whether the evidence demonstrated that the security guard was acting within the scope of his employment when he shot plaintiffs. To be sure, the security guard manifestly provided security for the store, and there was an issue of fact whether his duties included carrying a gun. But that does not mean that defendant would necessarily be liable for any use of that gun by the security guard. That argument is akin to the "aided by agency relationship" exception to employer nonliability, under which the employer would be liable for a tort committed beyond the scope of employment if the agency relationship between employer and employee aided the employee in harming the plaintiff. *Id*. at 222. But our Supreme Court has rejected that exception. *Id*. at 227. Instead, we must determine whether the shooting was committed within the scope of the security guard's employment.

The security guard testified that his job duties included minding the store, making sure no one tried to rob the store, and keeping the parking lot clean. Assad Pattah, an owner of the store, testified that the security guard's job duties included helping customers, keeping things "smooth" in the store, making sure no one was standing outside the store doors, and calming down customers in the event of a dispute between customers. According to the trial court, the evidence established that the security guard was working in his capacity as a security guard for defendant and was armed with a weapon that the security guard claimed he was carrying as part of his duties. The trial court decided that there was a genuine issue as to whether "controlling this ruckus that spiraled out into the shooting . . . in the parking lot was really a part of his duties or really he just got his ego bruised somehow and decided to [act]." But the evidence shows that the security guard was not attempting to control the ruckus. He was the ruckus.

Without doubt, the interaction between King and the security guard began with the security guard acting in the scope of his employment, i.e., confronting King about a purported violation of a store policy, but that does not render the subsequent shooting also within the scope of the security guard's employment. King and McElrath testified that they went into the store together to confront the security guard about being disrespectful to King. During the security guard's criminal trial, he testified that he "snapped" and shot McElrath because he believed the death threats that McElrath purportedly made, and he was not going to let someone kill him. He stated that he was "just going on emotions" and was not thinking. He also testified that he was trying to let McElrath know that he was not someone McElrath could threaten in that manner. Further, the security guard testified

that he was upset that McElrath believed lies that King allegedly told McElrath about the security guard. In addition, McElrath testified that he thought the security guard shot him to set an example because the security guard was embarrassed in front of his coworkers.

Plaintiffs insist that a reasonable jury could find that "the shooting arose out of [the security guard]'s overzealous performance of his duties to end disputes on the premises." But that assertion is not supported by the evidence. The evidence strongly suggests that the shooting did not arise from an overzealous attempt to end disputes at the store. Instead, it occurred because of personal reasons. The record contains no evidence that the security guard shot plaintiffs for the purpose of ending a dispute at his employer's store. Rather, the evidence establishes that the security guard committed the shooting because he "snapped," he was angry about the threat that McElrath made to him, and he believed that McElrath might kill him. Although the altercation started because of the security guard's employment with defendant, that fact does not dictate that the shooting was committed within the scope of the security guard's employment.

No evidence indicates that, by the time of the shooting, the security guard was acting within the scope of his employment. No evidence reflects that when the security guard shot plaintiffs, he was "engaged in the service of his master, or while about his master's business," or that the security guard "accomplished the [shooting] in furtherance, or the interest, of the employer's business." *Hamed*, 490 Mich at 11. Conversely, evidence reveals that the security guard was acting to further his individual interest, i.e., to prove a personal point, self-defense, and to get revenge for McElrath threatening him.[4] All the evidence about the security guard's motive for the shooting reveals that he was motivated by purely personal reasons. The evidence reflects that the shooting was solely intended to further the security guard's individual interests, and therefore was not within the scope of his employment. *Mueller*, 323 Mich App at 572. Therefore, on plaintiffs' claim of respondeat superior, we can find no genuine issue of material fact as to whether the security guard was acting within the scope of his employment with defendant when he shot plaintiffs, so defendant is entitled to summary disposition under MCR 2.116(C)(10). The trial court erred when it held otherwise.

## B. NEGLIGENT HIRING, TRAINING, MANAGEMENT, OR SUPERVISION

Defendant asserts that the trial court erred by denying its motion for summary disposition of plaintiffs' claim of negligent hiring, training, management, or supervision, insisting that it ought not be held liable on that claim because the security guard's actions when shooting plaintiffs were not foreseeable. An employer may be directly liable for negligently hiring, training, managing, or supervising an employee. *Mueller*, 323 Mich App at 572. "[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Id.* at 574. "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable."

---

[4] The surveillance video also depicts Mawloud repeatedly trying to get defendant to settle down, separate from plaintiffs, and go back inside the store.

*Id*. at 575. "[E]mployers are not expected to anticipate that their employees will engage in criminal conduct without some particularized forewarning thereof." *Id*.

When defendant hired the security guard, he had no criminal record, and no evidence even suggests that he suffered from a mental illness. The issue is whether the security guard's insistence that he possess a gun at work, even after store owners told him that he could not do so, amounts to actual or constructive knowledge by defendant that made the shooting predictable. On that matter, the trial court ruled that if defendant "knew he was carrying the gun, told him not to do it, and still allowed him to continue to work there armed, they're on notice that this dangerous result could've occurred and they did nothing."

Here, the specific misconduct at issue occurred when the security guard shot both plaintiffs outside defendant's store. There is no dispute that the security guard carried the gun at least some of the time while working at defendant's store. Asaad testified that he saw the security guard carry the gun in the store on several occasions, and he told the security guard not to carry the gun several times. Assad stated he did not see the security guard carry the gun at work after those discussions, but Asaad affirmed that the security guard continued carrying the gun, and he acknowledged that the security guard probably carried the gun all the time. In addition, a store employee testified at the security guard's criminal trial that it was not unusual for the security guard to carry the gun. On the other hand, the security guard testified at his criminal trial that he carried a gun as part of his job duties. Similarly, there is no real dispute that defendant did not provide the security guard with training for carrying the gun at the store. Specifically, Mawloud and Asaad both testified that defendant's store did not provide the security guard with courses or training regarding use of force or carrying a gun.

Considering the evidence in the light most favorable to plaintiffs, *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 507; 991 NW2d 230 (2022), a genuine issue of material fact exists as to the foreseeability that the security guard would shoot a customer in the midst of an altercation at the store. Despite telling the security guard that he could not carry the gun at work, defendant failed to take any further action aimed at preventing the security guard from bringing the gun to work. This resulted in defendant employing a security guard who defied the request of his employer and insisted on carrying a gun, and who had received no training about the use of the gun. Thus, the trial court did not err by denying defendant's motion for summary disposition of plaintiffs' claim of negligent training, management, or supervision.

III. CONCLUSION

For the reasons set forth in this opinion, we reverse the trial court's order denying summary disposition to defendant on plaintiffs' claim of respondeat superior, but we affirm the trial court's order denying summary disposition to defendant on plaintiffs' claim of negligent hiring, managing, training, or supervising, and we remand the case for any further proceedings consistent with this opinion that are necessary in the wake of the parties' settlement. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

-6-